DARLENE M. RICKER
State Bar No. 151653
25019 Pacific Coast Hwy.
P.O. Box 2285
Malibu, California 90265
Tel. (310) 457-8600
Fax (310) 457-8602
email: dmricker@aol.com

Attorney for Defendant
George Williams

Priority ✓
Send
Enter
Closed
JS-5/JS-6
JS-2/JS-3
Scan Only

FILED
CLERK, U.S. DISTRICT COURT
JUL 22 2005
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION BY DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

RODERICK CARDALE REED et al.,

Defendants

No. ED-CR 03-84(A)-VAP

MOTION TO DISMISS INDICTMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

Defendant George Williams, by and through his counsel of record, Darlene Ricker, hereby files his written motion for an Order dismissing the indictment in the above-referenced matter. This motion is made pursuant to the Court's Order of July 20, 2005, directing counsel to file written briefs on the oral motion to dismiss made by Mr. Williams' counsel during trial.

//

//

//

DOCKETED ON CMS
JUL 26 2005
BY 044
978

**This motion is based upon the attached memorandum of points and authorities, the documents on file in this matter, and any additional argument the Court may wish to hear.**

**DATED: July 22, 2005**

**Respectfully Submitted,**

**DARLENE M. RICKER**
**Counsel for defendant,**
**George Williams**

MEMORANDUM OF POINTS AND AUTHORITIES

I

INTRODUCTION

A. Procedural Background

Trial in the instant matter began July 12, 2005 and is ongoing.

Among the Government's witnesses are several cooperating codefendants who have pled guilty (the "cooperators"). Federal agents who interviewed the cooperators and who memorialized the defendants' statements in reports (the "reports") also testified.

During the proceedings of July 19, 2005, defense counsel collectively informed the Court that they had not received in discovery notes taken during the agents' interviews with the cooperators. Under questioning by the Court, Michelle Starkey, a Special Agent for the Bureau of Alcohol, Tobacco and Firearms ("ATF") who was on the Government's list of trial witnesses, stated that after she prepared her reports, she had destroyed her notes of her interviews with the cooperators. Agent Starkey stated that this was her common practice and that no one at the ATF had directed her to destroy her notes.

On July 20, 2005, undersigned counsel made an oral motion, which was joined by all codefendants, to dismiss the indictment based upon Agent Starkey's destruction of the notes. An evidentiary hearing ensued later that day, at which Agent Starkey repeated her above-referenced statements under oath. She further testified that "everything in [her] notes went into" the reports and that the reports thus contained the identical information she had obtained from the witnesses and had memorialized in her notes.

As an interim remedy, the Court ruled that Agent Starkey (who had been present throughout the trial proceedings despite a order excluding all witnesses) would not be permitted to testify at trial.

The Court directed the parties to brief the issue of whether the indictment should be dismissed because of the destruction of the notes or whether another remedy was available. As set forth within, dismissal of the indictment is appropriate because of the extreme prejudice that has inured to the defense from the destruction of the agent's notes and from the Government's overall pattern of misconduct.

B. Testimony of Kim Stinson

Several cooperators testified at trial. Key among them was Kim Stinson, who provided testimony against each of the four remaining codefendants. Stinson's testimony with regard to defendant George Williams ("Mr. Williams") was particularly harmful because it provided the gateway for the Government to introduce otherwise inadmissible evidence against Mr. Williams.

Mr. Williams had argued that Stinson should not be permitted to testify because defense counsel could not effectively cross-examine him without Agent Starkey's interview notes. The notes would have enabled counsel to properly assess the contents of Agent Starkey's report with regard to the information Stinson had provided to the Government against Mr. Williams. The Court overruled the defense objection and allowed Stinson to testify.

During his testimony, Stinson authenticated Government Exh. 107, a tape recording of an intercepted telephone conversation between himself and Mr. Williams, as containing both their voices. Mr. Williams had also objected to the tape on the same grounds it had raised with regard to Stinson's testimony (i.e., admission of the tape recording would violate Mr. Williams' Sixth Amendment right to confront witnesses). The Court overruled the objection and provisionally admitted the tape subject to a subsequent motion to strike. Exhibit 107 was played for the jury.

C. Admission of Additional Tape Recordings

Later in the proceedings, the Government's case agent, Detective Ty Labbe, testified against Mr. Williams. Det. Labbe authenticated Mr. Williams' voice on another intercepted conversation (Gov. Exh. 111).

At a hearing outside the presence of the jury (as had occurred with regard to Gov. Exh. 107, *supra*), defense counsel objected to the introduction of exhibit 111 as a co-conspirator statement on the grounds that there was no independent nonhearsay evidence establishing the requisite link between Mr. Williams and the alleged conspiracy.[1] The Court overruled the objection, finding exhibit 111 admissible on the basis that exhibit 107 (the tape that was introduced through Stinson) provided sufficient evidence of a conspiracy and of Mr. Williams' involvement in it.

Thus, without the testimony of Stinson, none of the three tapes included in the Government's exhibits against Mr. Williams would have been admissible.

## II

## ARGUMENT

### A. THE INDICTMENT SHOULD BE DISMISSED BECAUSE AGENT STARKEY'S DESTRUCTION OF HER INTERVIEW NOTES DEPRIVED MR. WILLIAMS OF HIS SIXTH AMENDMENT RIGHTS TO A FAIR TRIAL AND TO CONFRONT WITNESSES AGAINST HIM

#### 1. Legal Standards

It is axiomatic that a defendant has a right to a fair trial and to confront the witnesses against him. U.S. Const., Amend. VI.

Federal agents "must preserve" their original or rough notes of witness interviews pursuant to the Jencks Act. *See, United States v. Harris*, 543 F.2d 1247, 1253 (9th Cir. 1976). A bad-faith showing of such destruction of evidence is not required. Even good-faith destruction of original or rough interview notes by a federal agent is unjustifiable. *United States v. Robinson*, 546 F.2d 309, 312 (9th Cir.

---

[1] Mr. Williams' counsel also objected to Gov. Exh. 129, another intercepted tape recording between Messrs. Williams and Reed, on the same grounds. The Government has not yet introduced exhibit 129 but has advised undersigned counsel that it intends to do so before it rests its case. The objection to exhibit 129 was denied on the same grounds as exhibit 111.

1976). Prejudice need not be demonstrated.[2]

2. <u>Without the Agent's Notes, Mr. Williams Was Precluded From Effectively Cross-examining and Impeaching Stinson in Violation of Brady v. Maryland</u>

The Government is required to produce to the defense all potentially exculpatory information. Jencks violations (*see infra*) may also implicate the rule of *Brady v. Maryland*, 373 U.S. 83 (1963). Thus, the Government is required to produce all evidence with potential use for impeaching Government witnesses. *United States v. Harris*, 543 F.2d 1247, 1252 (9th Cir. 1976).

The defense was prevented from effectively cross-examining Stinson because it was deprived of Agent Starkey's interview notes. For example, with regard to another cooperator, the Government in discovery had provided the defense with a report of a proffer session with cooperator Shane Williams. Accompanying it were handwritten notes, which AUSA Timothy Searight advised the Court were his. The notes contain important information not reflected in the report. In the notes, defendant George Williams' name appears in the notes in a list of several other suspects' names. A box is drawn around the words "George Williams," apparently indicating that he had been discussed during the proffer session. Nowhere in the report does the name George Williams appear. Had Shane Williams' trial testimony incriminated George Williams (which it did not), the notes could have been used for impeachment regarding whether the Government had ever asked him about George Williams' alleged involvement in the charged conspiracy.

---

[2] The *Robinson* and *Harris* cases required a showing of prejudice because those were seminal cases that directed the FBI and other federal agencies to preserve agents' original notes; thus, the rule could only be applied prospectively. Now, 29 years hence, any such argument the Government may raise would be unavailing. Although the prejudice to Mr. Williams from Agent Starkey's destruction of her notes is clear and has been demonstrated herein, it need not be proven. Thus, the destruction of the agent's notes is not subject to harmless error analysis.

By the same reasoning, had the defense had access to Agent Starkey's notes of all the proffer sessions or telephone interviews she conducted with Stinson and others, it would have been able to make such vital assessments as to all the testifying cooperators. Without the notes, the defense has been hamstrung from doing so. Thus, the defendants have been deprived of their constitutional rights to due process and a fair trial., which can only be remedied by dismissal of the indictment.

B. THE INDICTMENT SHOULD BE DISMISSED BECAUSE THE GOVERNMENT'S DESTRUCTION OF EVIDENCE CONSTITUTES OUTRAGEOUS GOVERNMENT CONDUCT

1. Legal Standards

The trial court may dismiss an indictment for prosecutorial misconduct even if the defendant was not prejudiced. *United States v. Ross*, 372 F.3d 1097 (9th Cir. 2004). Dismissal of an indictment under the district court's supervisory powers is proper when outrageous law enforcement conduct violates due process. *United States v. Simpson*, 813 F.2d 1462, 1464-1465 (9th Cir. 1987).

2. The Government's Conduct Was *Per Se* Outrageous Because It Was On Notice That It Had a Duty to Preserve the Agent's Notes

As Mr. Williams' counsel argued orally, it has been bedrock Ninth Circuit case law for nearly 30 years that federal agents "must preserve" their original or rough notes of witness interviews pursuant to the Jencks Act. *See, United States v. Harris*, 543 F.2d 1247, 1253 (9th Cir. 1976). Thus, it was patently outrageous for Agent Starkey to destroy her notes and for the prosecution to have failed to ensure that all agents' notes of interviews with prospective Government witnesses were preserved.

//

//

//

3. *Viewed in the Totality of the Circumstances, the Government's*

Conduct Was Outrageous

A related issue arose at trial regarding whether the Government has provided to the defense all notes and reports of any other agents who attended proffer sessions or telephone interviews and prepared the reports. There was testimony from at least one cooperator regarding a proffer session for which the defense had not received a report.[3]

At the proceedings of July 20, 2005, in response to questioning by the Court, Government counsel stated that he believed all reports of interviews with the cooperators had been provided to the defense. He further stated that there had been only one proffer session with cooperator Henry Henderson (on 4/6/04), which had already been provided to the defense. However, on the following day the prosecution provided defense counsel with a previously undisclosed report of another proffer session with Henderson (which had taken place 6/18/04). The defense had been completely unaware of this proffer session or statement.

Counsel for codefendant Roderick Reed argued orally on behalf of all codefendants that failure to produce all agents' reports and notes constitutes a Rule 16 discovery violation that evidences a pattern and practice of government misconduct or outrageous government conduct in this case. Said argument regarding the Government's nondisclosure of the reports, notes and other discovery materials (including but not limited to a missing police photograph of Mr. Reed and the Government's failure to preserve wiretap "CDC" evidence), as contained in the reporter's transcript, is incorporated with reference herein.

Taken as a whole, and in the context of Agent Starkey's destruction of all her interview notes with the cooperators, the foregoing demonstrates that the

---

[3] As do the destroyed notes that are the subject of the instant motion, the reports memorialize statements made by the cooperating codefendants and are subject to disclosure under the Jencks Act. *See discussion infra.*

Government's conduct was so outrageous as to warrant dismissal of the indictment.[4]

## C. IF THE INDICTMENT IS NOT DISMISSED, THE ENTIRE TESTIMONY OF KIM STINSON AND GOVERNMENT EXHIBITS 107, 111 AND 129 SHOULD BE STRICKEN AND A CURATIVE INSTRUCTION GIVEN BECAUSE THE DESTRUCTION OF THE NOTES VIOLATED THE JENCKS ACT

When agents' notes have been destroyed, the Court must first determine as a threshold matter whether the notes are deemed to constitute "statements" under the Jencks Act, 18 U.S.C. Section 3500. *United States v. Griffin*, 659 F.2d 932, 937 (9th Cir. 1981). If the district court finds that the notes were a verbatim recital of the witnesses' remarks, then the proper sanction is to strike the testimony of that witness. *Id.* at n. 3.

Agent Starkey's notes were statements for purposes of Jencks. She testified at the evidentiary hearing that "everything in [her] notes went into" the reports and that the reports thus contained the identical information she had obtained from the witnesses and had memorialized in her notes. Should the Court wish to examine Agent Starkey's reports, it is clear on their face that they purport to contain a recitation of what the witnesses told her. Thus, they are statements to which Mr. Williams was entitled. Their destruction violated the Jencks Act. At a minimum, the testimony of Stinson and the tapes introduced directly or indirectly through him should be stricken.

//

//

//

---

[4] The only potential alternate remedy would be to strike the testimony of all the cooperators whom Agent Starkey interviewed and any taped conversations they authenticated at trial. *See infra*.

**D. THE PREJUDICE TO MR. WILLIAMS FROM THE CUMULATIVE ERROR BASED ON THE ADMISSION OF STINSON'S TESTIMONY AND THE TAPED CONVERSATIONS IS TOO GREAT TO REMEDIED BY STRIKING THE TESTIMONY**

As undersigned counsel argued orally, Mr. Williams' position remains that striking the testimony of Stinson and the tapes of the three telephone conversations is an insufficient remedy because of the extreme prejudice that has inured to the defense. Simply put, it is impossible to "unring the bell" after the jury has heard the Stinson testimony and the audiotape evidence, which appears to represent the Government's entire case against Mr. Williams. Thus, dismissal of the indictment, although a harsh sanction, is the only adequate remedy given these circumstances.

However, should the Court deny the instant motion to dismiss, as set forth above, the testimony of Stinson should be stricken. Further, because Stinson authenticated exhibit 107 and provided the foundational gateway for admission of the other two tapes (exhibits 111 and 129), all three contested tapes should be stricken from the record. A curative instruction should be given with regard to all the stricken evidence.

## III

## CONCLUSION

Based on the foregoing, the indictment should be dismissed. In the alternative, the testimony of Kim Stinson and the contested tape recordings should be stricken from the record and a curative instruction given.

DATED: July 22, 2005

Respectfully submitted,

DARLENE M. RICKER
Counsel for defendant,
George Williams