RECEIVED

FILED

Page 2

MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT

SENTENCE BY A PERSON IN FEDERAL CUSTODY

2010 NOV -5 AM 4: 20

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
RIVERSIDE

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.

BY ___

| United States District Court | *District* CENTRAL DIST. OF CALIF. RIVERSIDE | |
|---|---|---|
| Name (under which you were convicted): *GEORGE WILLIAMS* | Docket or Case No.: *EDCR-03-84-VAP 24* | |
| Place of Confinement: *UNITED STATES PENITENTIARY VICTORVILLE* | Prisoner No.: *30152-112* | |
| UNITED STATES OF AMERICA *EASTERN DIVISION RIVERSIDE CENTRAL DISTRICT CALIFORNIA* v. *GEORGE WILLIAMS* | Movant (include name under which you were convicted) | |

# ED CV 10 - 01714 VAP

1. (a) Name and location of court that entered the judgment of conviction you are challenging:
*CENTRAL DISTRICT OF CALIFORNIA (EASTERN DIVISION RIVERSIDE)*

   (b) Criminal docket or case number (if you know): *EDCR-03-84-VAP-24*

2. (a) Date of the judgment of conviction (if you know): *July 28 2005*

   (b) Date of sentencing: *JANUARY 17 2006*

3. Length of sentence: *LIFE*

4. Nature of crime (all counts): *only count one 21 U.S.C 846 conspiracy to manufacture, posses with intent to distribute more than 100 grams of (PCP)*

5. (a) What was your plea? (Check one)

   (1)  Not guilty  ☑          (2)  Guilty  ☐          (3)  Nolo contendere (no contest) ☐

   (b) If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, what did you plead guilty to and what did you plead not guilty to?

6. If you went to trial, what kind of trial did you have? (Check one)          Jury ☑          Judge only ☐

7.  Did you testify at a pretrial hearing, trial, or post-trial hearing?    Yes ☐    No ☑

8.  Did you appeal from the judgment of conviction?    Yes ☑    No ☐

9.  If you did appeal, answer the following:

(a) Name of court: *Ninth Circuit Court of Appeal*

(b) Docket or case number (if you know): *05-50018*

(c) Result: *Denied*

(d) Date of result (if you know): *August 4 2009*

(e) Citation to the case (if you know):

(f) Grounds raised: *(1) Failure to inform defendant his prior conviction (2) insufficient evidence to support conviction on count (one) (3) insufficient hold defendant accountable for 175 kilograms (ep (4) Erroneous jury instruction on the conspiracy (5) Wiretap evidence denied (6) suppress evidence wiretap*

(g) Did you file a petition for certiorari in the United States Supreme Court?    Yes ☐    No ☑

If "Yes," answer the following:

(1) Docket or case number (if you know):

(2) Result:

(3) Date of result (if you know):

(4) Citation to the case (if you know):

(5) Grounds raised:

10. Other than the direct appeals listed above, have you previously filed any other motions, petitions, or applications concerning this judgment of conviction in any court?

Yes ☐    No ☑

11. If your answer to Question 10 was "Yes," give the following information:

(a)  (1) Name of court:

(2) Docket or case number (if you know):

(3) Date of filing (if you know):

(4) Nature of the proceeding:

(5) Grounds raised:

(6) Did you receive a hearing where evidence was given on your motion, petition, or application?     Yes ❑   No ❑

(7) Result:

(8) Date of result (if you know):

(b) If you filed any second motion, petition, or application, give the same information:

   (1) Name of court:

   (2) Docket or case number (if you know):

   (3) Date of filing (if you know):

   (4) Nature of the proceeding:

   (5) Grounds raised:

(6) Did you receive a hearing where evidence was given on your motion, petition, or application?       Yes ❑   No ❑

(7) Result:

(8) Date of result (if you know):

(c) Did you appeal to a federal appellate court having jurisdiction over the action taken on your motion, petition, or application?

   (1)   First petition:        Yes ❑   No ❑

   (2)   Second petition:     Yes ❑   No ❑

(d) If you did not appeal from the action on any motion, petition, or application, explain briefly why you did not:

12. For this motion, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States.  Attach additional pages if you have more than four grounds.  State the facts supporting each ground.

**GROUND ONE:**

(a) Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

(b) **Direct Appeal of Ground One:**

    (1) If you appealed from the judgment of conviction, did you raise this issue?

        Yes ❑   No ❑

    (2) If you did not raise this issue in your direct appeal, explain why:

(c) **Post-Conviction Proceedings:**

    (1) Did you raise this issue in any post-conviction motion, petition, or application?

        Yes ❑ No ❑

    (2) If your answer to Question (c)(1) is "Yes," state:

    Type of motion or petition:

    Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):


(3) Did you receive a hearing on your motion, petition, or application?

   Yes ❑   No ❑

(4) Did you appeal from the denial of your motion, petition, or application?

   Yes ❑   No ❑

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

   Yes ❑   No ❑

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:


Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):


(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:




**GROUND TWO:**

(a)  Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

**(b) Direct Appeal of Ground Two:**

    (1) If you appealed from the judgment of conviction, did you raise this issue?

      Yes ❑   No ❑

    (2) If you did not raise this issue in your direct appeal, explain why:


**(c) Post-Conviction Proceedings:**

    (1) Did you raise this issue in any post-conviction motion, petition, or application?

      Yes ❑   No ❑

    (2) If your answer to Question (c)(1) is "Yes," state:

    Type of motion or petition:

    Name and location of the court where the motion or petition was filed:


    Docket or case number (if you know):

    Date of the court's decision:

    Result (attach a copy of the court's opinion or order, if available):


    (3) Did you receive a hearing on your motion, petition, or application?

      Yes ❑   No ❑

    (4) Did you appeal from the denial of your motion, petition, or application?

      Yes ❑   No ❑

    (5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

      Yes ❑   No ❑

    (6) If your answer to Question (c)(4) is "Yes," state:

    Name and location of the court where the appeal was filed:


    Docket or case number (if you know):

    Date of the court's decision:

    Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

## GROUND THREE:

(a)  Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

(b) **Direct Appeal of Ground Three:**

    (1) If you appealed from the judgment of conviction, did you raise this issue?

        Yes ❑   No ❑

    (2) If you did not raise this issue in your direct appeal, explain why:

(c) **Post-Conviction Proceedings:**

    (1) Did you raise this issue in any post-conviction motion, petition, or application?

        Yes ❑   No ❑

    (2) If your answer to Question (c)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(3) Did you receive a hearing on your motion, petition, or application?

Yes ☐   No ☐

(4) Did you appeal from the denial of your motion, petition, or application?

Yes ☐   No ☐

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

Yes ☐   No ☐

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

**GROUND FOUR:**

(a) Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

(b)  Direct Appeal of Ground Four:

    (1) If you appealed from the judgment of conviction, did you raise this issue?

        Yes ❏  No ❏

    (2) If you did not raise this issue in your direct appeal, explain why:


(c) Post-Conviction Proceedings:

    (1) Did you raise this issue in any post-conviction motion, petition, or application?

        Yes ❏  No ❏

    (2) If your answer to Question (c)(1) is "Yes," state:

    Type of motion or petition:

    Name and location of the court where the motion or petition was filed:


    Docket or case number (if you know):

    Date of the court's decision:

    Result (attach a copy of the court's opinion or order, if available):


    (3) Did you receive a hearing on your motion, petition, or application?

        Yes ❏   No ❏

    (4) Did you appeal from the denial of your motion, petition, or application?

        Yes ❏   No ❏

    (5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

        Yes ❏   No ❏

    (6) If your answer to Question (c)(4) is "Yes," state:

    Name and location of the court where the appeal was filed:


    Docket or case number (if you know):

    Date of the court's decision:

    Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

13. Is there any ground in this motion that you have <u>not</u> previously presented in some federal court? If so, which ground or grounds have not been presented, and state your reasons for not presenting them:

14. Do you have any motion, petition, or appeal <u>now pending</u> (filed and not decided yet) in any court for the judgment you are challenging?      Yes ❑   No ❑
If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised.

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment you are challenging:
(a) At preliminary hearing:   *DARLENE Ricke*

(b) At arraignment and plea:   *DARLENE Ricker*

(c) At trial:   *DARLENE Ricker*

(d) At sentencing:   *DARLENE Ricker*

Page 12

(e) On appeal: ROBISON D HANLEY JR

(f) In any post-conviction proceeding: NO

(g) On appeal from any ruling against you in a post-conviction proceeding: No

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?      Yes ☑ No

17. Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?      Yes ☐ No ☑

(a)  If so, give name and location of court that imposed the other sentence you will serve in the future:

(b) Give the date the other sentence was imposed:

(c) Give the length of the other sentence:

(d) Have you filed, or do you plan to file, any motion, petition, or application that challenges the judgment or sentence to be served in the future?      Yes ☐  No ☐

18. TIMELINESS OF MOTION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2255 does not bar your motion.* Defendant previously counsel did not filed a writ of cert, But the supreme court has case law on additional 90 day from the final Judgment for court of appeal, petitioner pray this court Accept his 28 U.S.C. 2255 motion. But the motion is filed timely with the additional 90 days add to the year.

---

* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2255, paragraph 6, provides in part that:

A one-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of —

(1) the date on which the judgment of conviction became final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making such a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Therefore, movant asks that the Court grant the following relief:

or any other relief to which movant may be entitled.

_____

Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct
and that this Motion under 28 U.S.C. § 2255 was placed in the prison mailing system on
_____ (month, date, year).

Executed (signed) on _____ (date).

*George Williams*

Signature of Movant

If the person signing is not movant, state relationship to movant and explain why movant is not
signing this motion.

UNITED STATES DISTRICT COURT

FOR THE CENTRAL OF DISTRICT OF CALIFORNIA

EATERN DIVISION RIVERSIDE

GEORGE WILLIAMS          )

    Petitioner          )          Case No: EDCR-03-84-VAP-24

                    )          Memorandum of Law Motion

      -vs-          )          Under 28 u.s.c.§2255 Set Aside,

                    )          Vacate, or Correct Sentence

UNITED STATES OF AMERICA)

    Respondent          )

_____)

MOTION TO VACATE, SET ASIDE, OR CORREECT

SENTENCE UNDER 28 U.S.C. §2255

Now comes, George Williams, collateralify challenge his illegal conviction and sentence for conspiracy to manufacture distribute phencyclidine (PCP), in violation of 21 u.s.c. §846.

Petitioner now files this motion and memorandum of law. Requesting that this Honorable Court Vacate his conviction and sentence under 28 u.s.c. §2255 based on a variety of constitutional violations occuring threw-out the proceedings in this court and appeals court, moreover these constitutional violations are supported evidence off the record and/or attorney's in the instant case.

STATEMENT OF JURISDICTION

The jurisdiction of this Honorable Court rest on 28 u.s.c.
§2255, which provide:

A prisoner is custody under sentence established by act of
congress claiming the right to be release upon the ground
that the sentence was impose in violations of the
constitution laws of the United States, or States or that
court was without jurisdiction to impose such senctence or
that was in excess of the maximium authorized by law, or is
otherwise subject to collateral attack may move the court
which the sentence to vacate, aside, or correct the sentence.

.......If the  Honorable Court finds that the judgment was
not authourized by law or otherwise collateral without
jurisdiction, or that the sentence imposed was not authorized
by law or otherwise open to collateral attack, or that there
has been such a denial or infringement of the constitutional
rights of the prisoner as to render the judgment vulnerable
to collateral attack, the court shall discharge the prisoner
or re-sentence him or grant a new trial or correct the
sentence as may appears appropriate 28 u.s.c. §2255.(2010)

Moreover, [A] 1-year period of limitation [that] applies to
a motion under the section. The one-year period starts from
the latest of: (1) the date on which the judgment of
conviction becomes final;......In the instant case, the Ninth
Circuit court August 4, 2009 See.Exhibit(A). Therefore

~2-

petitioner's 28 u.s.c.§2255 motion is timely and his this
Honorale Court has jurisdiction to entertain this petition
because petitioner has until November 4, 2010 to have this
instant petition filed, because finality attaches for purpose
of the one-year limitations period of §2255 (6)(1) whent the
time for filing until certiorai petition expires See Clay v.
United Statess, 537 U.S. 522, 527, 155 L.ed .2d 88, 123 S.Ct,
1072 (2003)

### FACTUAL BACKGROUND

On June 3, 2004 a federal grand jury for the Central
District of California returned a nine-count first
superseding indictment charging and twenty other with drug
and firearms violations petitioner George Williams on Count
one charged with a violation of 21 u.s.c. §841(a)(1),
841(b)(1)(a), 841(c)(2) and 846 conspiracy to manufacture,
posses with intent to distribute more than 100 grams of PCP.

On July 7, 2005 the government filed an information
pursuant to 21 u.s.c.§851 enhancing the potential penalty
petitioner faced. On July 28, 2005 petitioner was found
guilty by a jury as charged in the indictment. District Court
held sentence January 17, 2006 defendant williams was
sentenced to life in prison, five years supervised release,
and a $100 special assessment.

INEFFECTIVE ASSISTANCE COUNSEL FAILED

TO CHALLENGE THE SPECIAL VERDICT FORM

AND PROVE THE ELEMENTS OF THE CONSPIRACY

ON THE INDICTMENT BEYOND A REASONABLE DOUBT

Because defense counsel did not raise this objection at trial that prejudice the defendant cause the indictment only charged the defendant with only 100 grams of PCP. The special verdict form instruction was giving to jury was differ from the indictment "it was obvious".....that if the jury would know they had a opition between less than 100 grams. Counsel did not object to the special verdict form at trial that affect his substantial rights seriouly the fairness or integrity of the proceedings. The defendant was improperly calculated its sentence on a quantity of drugs higher that the quantity IN indictment on its special verdict form. Here, the jury's finding of "over 100 grams PCP would expose the the defendant to a higher quantity sentencing that violate denfendant'a sixth amendment rights.....

Defense counsel failed to object  the erroneous jury instructions on the conspiracy count the drug quantity finding require revesral defendant's challenge to the jury instructions are meritorious. The defendant can demonstrate district court abuse it discretion NOT instructing the jury on specific jury instructions in which defendant could have prevailed on the instant offense. As previously mentioned, defendant counsel did recognized the apparent deficencies in the court's conspiracy instructions and requested a theory of

defense instruction on mere presence and association as well
the knowledge Res Mens Rea requirement that was missing from
the court's instruction. EXHIBIT (B)

In this instant case, defense counsel's request the
evidence to support the instruction was "mere presense"
instruction was clearly necessary in which defendant have
been found not guilty on Count(1) of the indictment. The
government's case was already lacking as defendant actually
being member the alleged conspiracy. Therefore, the defendant
was prejudice by the district court refusing to give  a mere
presence instruction requires a reversal.

Because only evidence that government have against
defendant was phone conversation that was giving by Mr.
Stinson on a couple occasion concerning cars that he want to
give away to Mr. Stinson, it was only one occasion that he
ever mention about making some money try to hook up a deal
from out of town with Mr. Stinson to contact at Mr. Reed but
it never happen, or was not mention either the record can
reflect. Now, if it was any tranaction was inspired between
them two it will be a buyer-seller relationship took place at
that time. There are no evidence to link the defendant to a
wide range conspiracy that is alleged by the government
against the defendant.

The record can reflect there no other witness testify against the defendant involuement in alleged conspiracy against him. The government cannot prove manufacture, imported, posses with intent to distribute (pcp), at any links showing the participated investingation of the seizure at any location of the alleged conspiracy which defendant name was not mention in connection to the paperwork at the location of 1464 Lorrance Place residence following the seizure with the investigation of the PCP lab, which defendant had no tied too. But the government witness Stinson allegation he saw defendant receive a gallon of PCP. There no other witness beside Stinson in this conspiracy to link defendant too. In there no other co-defendant can back uup this witness statement either. The following statement made by Kim Stinson:

VOLUME IV

Q. Did you ever see Mr. Williams receive any quantities of PCP at that location?

A. I believe on one occasion I seen Mr. Williams receive a gallon of PCP.


The scope of conduct for which the conspiracy charged is very limit on defendant to foreseeable acts of criminal activity to be prove act beyond a reasonable doubt. United States v. Estrada-Macias, 218 F.3d 1064 (9th Cir 2009) the government failed to prove any evidence that indicated defendant had full knowledge of conspiracy. United States v. Esquivel-Ortega, 484 f.3d 1221 (9th cir 2007) United States v

Sanchez-Mata, 925 f.2d 1166 (9th Cir 1999) United States v
Ramirez, 176 f.3d 1179 (9th cir.2009). The evidence was
insufficient to prove the element of the crime of conspiracy
to manufacture and distribute PCP beyond a reasonable doubt
on count one. A merely attempt to purcases drugs does not
become a member of a conspiracy the absent of the evidence to
prove the proof is insufficient  to hold conviction against
defendant. See United States v Lennick 18 f.3d 814, 819 (9th
cir 1994) United States v Ramirez-Robles, 386 f.3d 1234, (9th
Cir 2004), which under plain error standard (1)error (2)that
was plain (3)that affected, substantial rights (4)seriously
affected the fairness, integrity, or public reputation of
judicial proceedings. See United States v. Jackson 2009 u.s
app lexis 23320 (9th cir 2009) Unites States v. Chico, 2009
u.s. app. lexise 18542 (9th cir 2009).


-A-

THE COUNSEL FAILED TO CHALLENGE THE
SPECIAL VERDICT FORM WAS INSUFFICIENT
TO HOLD DEFENDANT ACCOUNTABLE FOR 175
KILOGRAMS PCP IN CONSPIRACY


The burden of the proof was on government to prove
defendant was involue or respondable for 175 kilogram PCP in
the alleged conspiracy. Which defendant was only indicted for
a 100 grams (pcp) in the his indictment. Which he was find
guilty on count one of the conspiracy. In support the
defendant claim counsel was ineffective, from not object to
the volume of pcp used to determine the base offense level in

trial. Also, counsel failed to raise this issue at any stage
of the his defense. Defendant must show (1)that counsel's
performance fell outside a wide range of reasonable conduct
and (2)that counsel's performance prejudiced the defense "so
serious as to deprive the defendant of a fair trial, a trail
whose result is reliable. Strickland v Washington, 466 u.s.
668, 687, 80 L.ed 2d 674, 104 S.Ct 2052 (1984).

Counsel was ineffectively at trail and sentencing for
falling to alert the court to United States Sentencing
Guidelines Manual Amend (484) effective November 1 1993,
Amendment (484) states that for determine the weight of a
controlled substance for sentencing purpose,"mixture or
substance does not include materials that must be separated
from the controlled substance before the contolled substance
can be used. This issue has arisen, subsequent to the United
States Supreme Court decision in Chapman v United States, 500
US 453, 114 L.ed 2d 524 111 S.Ct 1919 (1991), in two types of
case. The first type of case involues a controlled substance
bonded to, or  suspended in, another substance (e.g. cocaine
mixed with bee wax); however, the controlled substance is not
usable until it is separated from the subtsance. Congress
knew attempt to control illegal drug distribution and by the
statue's structure. Congress indicate that the weight of a
pure drug was to be used to determine a sentence, having done
so with respect to phencyclidine (pcp) and methamphetamine by
providing for a mandatory minimum sentence based either on
the weight of the mixture or substance containing a
detectable amount of the drugs, or lower weights of the pure
drug which included for sentencing purposes.

COUNSEL FAILURE TO ADVISE DEFENDANT

OF HIS CONSEQUENCE ADMITTED TWO PRIOR

CONVICTION TO INFORM ADMISSION'S RESULT

A MANDATORY LIFE SENTENCE

The record undiputed facts showing that counsel failed to meet her professional obligations in regard to defendant was prejudiced by failure to advise him of the consequence of a guilty verdict by a jury. Which unconstitutionally mislead "unintelligent" defendant without information necessary to asses intelligently about the collaterial consequence admitted to admission of two prior felony drug convictions.

Secondly, Honorable District Court failed to advise defendant about the collateral consequence that defendant facing a mandatory life sentence by admitted to two prior convictions. The defendant was prejudiced by disadvantages information on December 5, 2005. Which Honorable District Court recognize that government filed a notice of enhancement under 21 u.s.c. §851 on July 5, 2005. The admission would result in a mandatory life sentence pursuant to 21 u.s.c. §841(b)(1)(a) and §846 as well career offender statute of U.S.C.G. § 4B1.6. The transcript show that there is no record of defendant admission was intelligent to know he was facing a mandatory life sentence by his counsel or the Honorable District Court. Which defense counsel was very much incompent about her client mandatory life sentence by unaware of collateral consequence of guilty verdict. Whether defendant subjectively deprive him of his Fifth and Sixth Amendment Rights to make a determination of his consequence

-9-

of his sentence. Whether to decide or enter plea a deal or go to trail. Therefore, no doubt under the plain error standard review failure to advise defendant effected his substantial rights to inform defendant statutory Maximum penalty may not be considered harmless error.

Because complete absence of any advice concerning the direct consequence of his admission by admitted the prior conviction without notify by him about mandatory life sentence will result in prejudiced against defendant. It clear a violation of a core constitutional principle would be error "so obvious" that failure to defendant it would seriously affect the fairness integrity, or public reputation of [the] judicial proceedings may result in a miscarriage of justice. There is no record showing that defendant's admission was intelligent knowing he was facing a mandatory life sentence.

On March 31, 2010, Padilla v. Kentucky, 599 u.s.___, 130 S.Ct 1473, 176 L.Ed. 2d 284, 2010 U.S. Lexis 2928 the Honorable Supreme Court hand down a 7-2 decision, criminal defense counsel has affirmative obligation to advise a client about immigration consequence in order to advise a client about immigration consequence in order provide effective assistance of counsel within the meaning of the Sixth Amendment. The court decision applies the standard of lawyer competence set fourth in Strickland v Washington to conviction to failure to give accurate advise on a collateral consequence of conviction. In order to qualify as incompetent resprespentation under STRICKLAND the represntation must fall "below an objective standard reasonableness", defendant can

-10-

full demonstrate unprofessional errors , the result of
proceeding would be different. Padilla received
constitutionally insufficient representation, Justice John
Paul Stevens, stated that the defendant's counsel could have
easily determined that his plea would eligible for
deportation simply reading the text of  the statute.
Defendant was put into the same situation could have easily
advise him about mandatory life sentence he was facing by the
admission on two prior conviction. But either counsel or
Honorable District Court does not advise him counsel
consequence to the defendant.

The counsel was ineffectively from not challenge the
colloquy on the defendant behalf under §851 section. In order
to demonstrate prejudice defendant can show:

(1) There was no colloquy was giving by the District Court or
by his counsel on the admission on December 5 2005 about his
21 u.s.c. 851 either.

(2) There nobody inform the defendant about his consequence
concern a mandatory sentence which failure to give a §851
colloquy.

(3) The defendant was clearly prejudice under plain error
standard without a reasonable doubt. Because the record is
very clear to support his claim that his substantial rights
were violate.

(4) Any other prior sentence, that was imposed within ten of
the defendant's commencement of the instant offense is
counted.

(5) Any prior sentence with the time period specified above
is not counted.

The applicable time period for (felony) any prior sentence
of imprisonment exceeding one year and one month that was
imposed within fifteen years of defendant commencement of the
instant offense is counted. Which is the definitions and
instruction for computing criminal history under 4A1.2.

The defendant do not understand nothing about the
mandatory life because he was not advise by counsel or by the
district court by admitted to the prior conviction will
result in a mandatory life sentence. Just because  defendant
admitted to two prior conviction its does means that he know
about mandatory life sentence.

The counsel failed to challenge the prior conviction over
(15) years old in resulting being sentence to life sentence
under 3559. It obvious to support the conviction because it
over (17) years old that government use against defendant.
Also counsel was very incompetent with no plan for his pre-
trail strategy to consult with the defendant about his
mandatory sentence nor did the district court. Because
defendant should had a pre-trial notice before trial to plan
a strategy. But instead it was after trail that he was unware

of his mandatory sentence against him until the day of
sentence. The standard is very clear about the defendant
lawyer failed on multiple occassion for failure give the
accurate advise to her client this must fall "below
reasonbleness standard in this case. See Padilla v kentucky,
130 S.Ct. 1486, 176 L.Ed .2d 284 (2010) held that the Sixth
Amendment mandates that "counsel must inform her client the
risk of the consequence. Therefore undoubtedly be numerous
situation in which deportation consequence of a particular
plea are unclear or uncertain. The duty of the private
practitioner in such case is more limited. United States v.
Forrester, 592 f.ed 972 (2009) Which the defendant was
misformed at to possible maximum sentence unintelligently
misadvise he was facing a 30 years sentence, instead of his
maximun sentence only was 0 to 20 years the case was remand.


In Padilla (JUSTICE ALITO) quote, the duty of the private
practitioner in such case is more limited. When the law is
not succinct and straighforward a criminal defense attorney
need do no more than advise a client that pending criminal
charges may a risk of adverse consequence. The defense
counsel must provide advice regarding only one the many
collateral consequence of a criminal conviction, many
defendant are likely to be mislead.

court lacked jurisdiction to enhance his sentence because
the government's notice of enhancement did not strictly
comply with the requirement of 21 u.s.c. §851(a)(1), because
listed one wrong conviction date and the wrong enhancement
statute. The Eleventh Circuit Court of Appeal, the
enhancement did not strictly comply with §851(a)(1) and the
district court lacked jurisdiction to enhance Bowden's
sentence. In which this instant case defendant was not notify
his consequence by this his defense counsel failed to inform
him of a guilty verdict by a jury would he be facing a
mandatory life sentence.

The Fifth Circuit held that one of the purposes of section
§851's requirement was to allow a defendant "ample time" to
determine whether to enten a plea or go to trial and plan his
trial strategy with full knowledge of the consequence of a
potential guilty verdict. It was clear that defendant was not
adequately notified of the possiblity of a mandatory life.
Further, he had been prejudiced because without notice that
he face a mandatory enhancement.........therefore defendant's
substantive right were affected. The defendant has a sworn
affidavit to support his claim. EXHIBIT(𝒞)

                    COUNSEL FAILED ON CROSS EXAMINATION
                    OTHER WITNESS BESIDE AGENT STARKEY AND
                    STINSON WITH THE ACCURACY INFORMATION
                    ON DESTROY NOTES.

During the course investgation the government agent starkey
admitted on destroy her notes for the intention from the only
government witness against defendant. Also defense counsel
made an oral motion to preclude all testimony by agent
starkey and to strike all testimony from witness stinson
because of the destruction of her original handwritten notes
of her interview with stinson. The destruction of the agent's
notes resulted in a jenecks violation preventing effective
cross-examination regarding the statement was by stinson to
agent starkey. The transcript revail the defense counsel
could have call other witness to verify the accuracy of the
agent notes. Because she had mention other people involuement
include the other co-defendant she interview about her notes
really being accurate.

Title 18 federal rule of criminal procedure section 3500:
(a) In any criminal prosecution brought by the united states,
no statement or report in the possession of the united states
which was made by a government witness or, prospective
government witness (other than the defendant) shall be the
subject of subpeopna, discovery, or inspection until said
witness has testified on direct-examination in the trial of
the case.

(b) After a witness called by the United States has testified
on direct-examination the court shall on motion of the
defendant, order the United States to produce any statement

(as herein after detined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified. If the matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination.

The Jencks Act provides criminal defendants, for purpose of cross-examination, with a limited right obtain certain witness statements that are in the government's possession. The right is subject to a temporal condition; it does not vest until the witness take the stand in the government's case and complete his direct testimony I.d 18 u.s.c. 3500. It also subject categorical, content based restrictions delineated in the statute:

A statute is not open to production under the Jencks Act unless it (1) relates to the same matter as the witness direct testimony I.d  3500(b) and (ii) either comprise grand jury testimony  3500(b) and (e) notably one of two general classes of statements of: (1) Written statement made by [the] witness and signed or otherwise adopted or approved by him; (2) A stenographic, mechanical, electrical, or other recording or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness and of and recorded contemporanously with the making of such oral statement........18 u.s.c. 3500(e)(1)(2). In the instant case, the Vol. IV-V Mr.

-16-

Stinson and Agent Starkey following transcript occured:

pg, 4-5

Defense counsel made oral motion to seek dismiss the
government witness based on the destruction of the evidence
been destroy by the agent Starkey. which is a Jencks Act
violation regardind her notes.

pg.55

(Q) Now I want to ask you about a different defendant. Do you
know George Williams?

(A) Yes Sir

(Q) How long have you known Mr. Williams?

(A) Maybe about a couple of years.

(Q) How was it you come to meet Mr. Williams?

(A) I met him through my cousin Rod.

Pg. 56

(Q) At the time that you met Mr. Williams where was he
living?

(A) San Barnandino, California.

(Q) And can you say when you met Mr. Williams were you living
at the studio?

(A) Yes, I believe I was.

(Q) What was Mr. Williams involuement in PCP with respect to

Mr. Reed?

(A) Rod would give him some, you know, give him some PCP
every now and then and he would sell it.

(Q) When you say "he would sell it", you mean Mr. William or
Mr. Reed?

(A) Mr. Williams

pg. 57

(Q) Were you ever present when quantities of PCP were brought
to Mr. William?

(A) Yes

(Q) And approximately how many occasion?

(A) A couple occasions

(Q) And where was the PCP delivered?

(A) To George's house

(Q) In San Bernadino?

(A) Yeah

(Q) And how was it packaged?

(A) Gallon bottles, Apple Juice.

(Q) Where did the PCP come from.

(A) Rodrick Reed

(Q) What is the largest quantity of PCP have seen delivered
from Mr. Reed to Mr. William

(A) Maybe a couple of gallons.

(Q) Did you yourself deliver the PCP to Mr. William or did
you do it with Mr. Reed, if you recall?

-18-

(A) I was with Rodrick one time, a couple time.

(Q) So you never did it just by yourself of did you?

(A) No. No. Sir


pg. 63


(Q) Back on Poppy Street on approximately how many would you
see George Williams over at Poppy Street?

(A) Seen him over there maybe two or three time.

(Q) And is that in addition to the occasion which he received
the gallon of PCP?

(A) Yes Sir


Pg. 91


(Q) On February 23, you were interview in 2005. That's this
year. You were interview by Michelle Starkey and agent
Gustafson along with Timothy Searight Sittiing right here. Do
you remember? and you lawyer, Mr.McKay. Do you remember that?

(A) Yes


pg. 92


(Q) A couple week ago. And who was it that you were interview
by?

(A) Mr. Searight, my lawyer the gentleman rigth there. I
forgot his name.

~19~

(Q) Mr. Bruwin?

(A) I forgot his name. He was there, and ATF agent Michelle
Starkey

(Q) All right, was anybody taking notes of year interview?

(A) Believe so


pg 102


(Q) Did you remember having an interview on October 29, 2003,
with Michelle Starkey and detective Ty Labbe. Do you remember
that?

(A) I remember numerous conversation with Mr. Labb and
Starkey, but that specific what you said, if I could see it.

(Q) May I approach, your Honor

The Court; you may

(A) Yeah I see it there.


pg. 103


(Q) What was the basic for you saying that Mr. Henderson's
wife was involved in Mr. Henderson's PCP business?

(A) Because she was

(Q) Well what exactly did she to that you know?

(A) Numerous times I seen her count money from PCP proceeds.
I seen her with some PCP before.


Pg. 110

-20-

(Q) Weren't you once arrested for perjury?

(A) Perjury

(Q) Mm-hmm.

(A) No, not that I'm aware of perjuring what?

(Q) How about rape?

(A) Rape? perjury? no I went to jail or a rape case there in my record.

(Q) Right, but you were arrested for it?

(A) Yes, I was and I stayed in jail two days and was out. It was D.A. reject.


pg. 114


(A) And on those two or there other occasions is it true you did see Mr. Williams receive or sell any drugs at that time?

(A) On a couple of occasion, No basically, we were just eating and talking.


pg. 116


(Q) Thank you. In this same conversation that's not about cars you testified about Mr. Williams stating that had out-of-stater people who didn't know about PCP correct?

(A) Yes

(Q) And also supposedly that because these people did not know about PCP that it might be possible. You testified to

-21-

get two or there times as much money for PCP?

(A) Yes

(Q) Did that ever happen?

(A) If it happened, not to my knowledge

(Q) How about this statement in the same transcript where Mr. Williams supposedly said he's quote, going to turn Rod on but he has to look out for us you testified that that meant, that statement?

(A) That Correct

(Q) Did that ever happen

(A) Yes

(Q) Mr. Williams was not among them, correct?

(A) No, I didn't see George there.


pg. 123


(Q) Im going to be showing you a copy of a report by ATF, Alcohol, Tobacco and Firearms, dated February 27, 2004, prepared by agent Michelle Stackey, and it is regarding a February 27 2004 meeting that you had with agent Starkey and Detective Labb.

(A) Yeah, I said that


pg 141


(Q) Get that Right. Did you ever sell PCP to Donald Hunter?

(A) I never sold no PCP to Donald Hunter.

-22-

(Q) Do you know who Donald Hunter.

(A) I know who Donald Hunter is

(A) If Donald Hunter came into court to say that you sold him PCP, would be a lying?

(A) It would be a total lie. I never sold Donald Hunter no PCP.

(Q) Now, you faciltated the PCP deal involving Donald Hunter and Tone, I believe on the 20th of February of 03 correct?

(A) Yes, I was involved in that, sir.


                        DIRECT EXAMINATION

Vol. V pg. 248


    Agent Michelle Starkey admitted interview multiple government witness, such as names Henry Hendson, Shane William and Kim Stinson. Which she admitted participated in conjunction government prosecution her answer was yes. The agent Strakey alleged she had exact number, several several interviews.

(A) I prepared a report from the notes and from what I heard in the interview. once I was completed with my report I took my notes and I shredded them.

(Q) you did that in every instance, as far as you recall?

(A) yes

(Q) When you would pregame a report from your notes did you put anything__ was everything in the notes put into report

(A) yes

                        -23-

(Q) and why do you do that?

(A) Because I have to be accurate with the information I'm getting specifically from defendant in front of his attorney and in front of the assistant United States Attorney.

pg. 250

(Q) And you always include everything in your report that's in your notes?

(A) yes

(Q) When you destroy your notes are you doing that in response to official ATF or other agency policy?

(A) No

(Q) And are you doing at the direction of anybody of anybody___any other officers, agents, the government, the prosecutor.

(A) No, nobody told me to destroy the notes.

(Q) That is simply your own practice?

(A) Yes

(Q) With regard to handwritten notes, you no longer have any handwritten notes of any of these?

(A) No.


CROSS-EXAMINATION


pg. 252-253


(Q) Just a couple of questions, Agent Starkey when you

-24-

testified you took notes during the interviews with the witnesses that the government asked you about, Henderson, Williams, Stinson and later they mentioned Legerald Johnson and that was refferred to as during interview. Did you mean interviews to mean in person interviews and telephone interviews?

(A) yes

(Q) Do you routinely take note during telephone interviews with potential witnesses for the government?

(A) I cant remember that, or that time I was right there by my computer and I was talking I believe and so I might have just went straight to my computer and started typing the report. I dont remember.

(Q) So sometimes what you refer to as notes may be perhaps not handwritten but something you typed into your computed?

(A) Like my report, like I have the report ready to go.

(Q) So does that mean sometimes you dont's necessarily take notes?

(A) Sometimes I dont take notes, I just go from my memory.

(Q) I think you said you did-- you said earlier when the government questioned you that you took notes every time.

(A) Mostly, yeah, mostly I do, but--

(Q) How about specifically with these witnessed? you told the government and us that you took notes every time when you interviewed Henderson, Williams, Stinson, Legerald Johnson.

(A) In proffers. In proffers yes

pg 254

(Q) So that I understand, so now were talking about telephone
interviews when you're saying that you may have just typed
into the computers.

(A) I'm Sorry, I'm misunderstanding. Is it the specific one
with Kim on the phone when I talked to him regarding--I know
I prepared a report, so--and I know that during a telephone
conversation with Kim I was right on the computer and I
recall just typing out the report, so I dont remember.

(Q) I cant remember if I took notes. I know that I was right
there by my computer or I was near my computer at the time,
if remembering. Do you have the report? Do you have the
report?

(Q) I do, but I'm not just asking about one report, I'm
asking any telephone interviews you did with any of the
witnesses, Henderson, Williams, Stinson or Legerald Johnson
on the telephone.

(A) Okay, I can remember-- I am recalling one event and I
just don't remember. I dont remember.

(Q) What event are you recalling.

(A) The one

(Q) -- Mr. Stinson's?

pg. 255

(A) Okay Im remembering--Im sorry, go ahead

-26-

(Q) Was it the Stinson telephone interview you were focusing on?

(A) Yes

(Q) The only other thing I need to know, please, is before you destroyed your notes that you referred to, did you show your notes and/or your written report to the witness?

(A) Did I show them my notes? I dont think so

(Q) Your notes or the report? The reason Im asking, was the witness given an opportunity to see what you were writing out as a report so that he would know whether everything he'd told you went into your notes actually went into the report?

(A) Right. I prepared a report and it was given to their attorney and nothing was ever called to my attention whether something was not right so,

(Q) When would you have destroyed your notes in relation to when you gave the report to attorney? Im just asking before--

(A) Right. Usually I did it right after. I never really held on to them for too long a times. I cant remember/

(Q) But you dont recalling having me with or showing your notes to any of the witnesses before destroying them?

(A) No No.


   An agent had interview the government witness Mr. Stinson in other. But had destroyed her notes the only evidence against defendant which is a violation 18 u.s.c.  3500. While it was in the trial court discretion or to strike the testimony or declare a mistrial on the behalf. The agent

Starkey admitted destroy her notes were not harmless error.
Since the notes was intentionally destroyed without any type
of was in good faith, there was no for the notes except
conflicting testimony of the witnesses. Which defendant can
be prejudiced by allow some testimony against defender. The
defense counsel should have question the other witnesses
about the accuracy of the report that was given by agent
Starkey. See United States v Riley, 189 f.3d 802 (9th Cir
1993) United States v McKoy, 78 f.3d 446-450-62 (9th Cir
1996) United States v Ogbuehi, 18 f.3d 807 (9th Cir 1994).

The question remain a issue for the defenant without
opportunity to challenge the accuracy of the witness
statement without full knowledge of the original notes that
took place by the agent Starkey that was destroy without no
authority. Therefore, destruction of the notes extreme
prejudice the defendant of the government misconduct against
the defender.

INEFFECTIVE ASSISTANCE OF COUNSEL FAILED
TO THE OBJECTION ON JURY INSTRUCTION
OF THE CONSPIRACY WHICH WAS ERRONEOUS

Defense counsel failure to the objection merely associated
with a person committing the crime does not mean he apart
conspiracy. The evidence must show beyond a reasonable doubt
that the defendant acted with apart of the conspiracy "drug

-28-

Jargon". The counse failed challenge that jury was never told
what jointly undertaken criminal activity to be foreseeable
drug quantities whether defendant held accountable for the
drug conduct which be was directly involved the entire
conspiracy, manufacture, distribution, dispensing of
possession with intent to manufacture PCP.

The jury instruction fail to incorporate an element that
has been clearly established by the Honorable Ninth Circuit
precedent. See United States v Perez, 116 f.3d 840 846-47
(9th Cir 1997). Finding plain error where a Judge submitted
incomplete Jury instruction, despite the fact of Circuit
Court precedent "clearly" and unambiguously required the
submission of the in relation to element.

The defendant is entitled to instructions relating to a
theory of defense for which there is any foundation in
evidence even though the evidence may be weak, insufficient,
inconsistent or of doubtful credibility. See United States
Romo-Romo 246 F.3d 1272 (9th Cir 2001) Clem v Lormeli 566
f.3d 1177 (9th Cir 2009) United States v Hairston (9th Cir
1995) United State v Wofford 122 F.3d 787, 789 (9th cir
1997).

In the instant case additionally, as previously shown,
none of the relevant conduct law was communicated to the jury
to guide them in holding defendant accountable for 175

kilograms of PCP. These errors in defendant's criminal jury
instructions requires vacated. Defense counsel failed to
objection on her client behalf. which was the instruction
jury was read as a whole on the conspiracy were clearly
misleading and inadequate to guide the jury's deliberation.

CONCLUSION

Defendant respectfully prays this Honorable District Court
GRANTED relief on his 28 u.s.c. 2255 motion. Because the
defendant was aware of his collateral consequence of a
mandatory life if found by guilty verdict by a jury. Which
deprive him of Fifth and Sixth Amendment Rights to make a
determination whether go the trial or plan a stragety or go
trial. Defendant counsel failed to advise defenadnt about his
circumstance admitted to admission of prior conviction to her
client facing a mandatory life sentence if found guilty by a
jury. Interest of justice, a great justice would be served if
defendant can prevent miscarriage of justice. Which a
defendant should not be expose to a greater sentence without
the element of crime of a criminal activity in the
conspiracy. Whether or not the agent Starkeky destroy her
notes was the report accurate. But it still prejudiced
defendant without getting the full knowledge to cross
examination the only government witness. Hormel v Helveing,
312 U.S. 552, 61 S.Ct. 719,721, 85 L.ed 1037 (1941)(Holding
the [R]ules of practice and procedue are devised to promote

the ends of Justice, NOT to defeat them), Haines v Keriner, 404 U.S. 519, 92 S.Ct 591, 30 L.ed .2d 652 (1972). Also contrue this instant motion liberally.

Respectfully Submitted

*George Williams*

Geogre Williams #30152-112

United States Penitentiary Victorville

P.O. Box 5300

Adelanto Ca. 92301


10-29-10

Mailing Date

CERFICATE OF SERVICE

I *George Williams* hereby certify three copies (1) original and (2) copy 28 u.s.c. §2255 motion. I served a true and correct copy of the following; which is deemend filed at the time was delivered to prison authorities for forwarding to the court, Houston v. Lack, 101 L.ed .2d 245 (1998) upon which the court and parties to litigation and/or his/her attorney of record, by placing same in a sealed, postage envelope addressed to:

United States District Court

Central District of California

Eastern Division

3470 12th St. Room 129

Riverside, Ca, 92501-3801

   And deposited same in the United States Postal mail at the United State Penitentiary, Victorville California, this *29* day of Octocber 2010.

Respectfully Submitted

*George Williams*

George William #30152-112

United States Penitentiary Victorville

P.O. Box 5300

Adelanto Ca. 92301

EXHIBIT (A)

UNITED STATES OF AMERICA, Plaintiff-Appellee, v. RODRICK CARD ALE REED, aka Boulevard, Li'l Rod, Defendant-Appellant. UNITED STATES OF AMERICA, Plaintiff-Appellee, v. GEORGE WILLIAMS, a/k/a JIMMY WILLIAMS, GEORGE JUNE, GEORGE WILSON AND JAMES WILLIAMS, Defendant-Appellant. UNITED STATES OF AMERICA, Plaintiff-Appellee, v. RICHARD DARNELL JOHNSON, a/k/a RICHARD JOHNSON, Defendant-Appellant.
UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
575 F.3d 900;2009 U.S. App. LEXIS 17283
No. 06-50040,No. 06-50048,No. 06-50302
October 24, 2008, Argued and Submitted, Pasadena, California
August 4, 2009, Filed

**Editorial Information: Subsequent History**

**Editorial Information: Prior History**

Appeal from the United States District Court for the Central District of California. D.C. No. CR-03-00084-VAP-1. D.C. No. CR-03-00084-VAP-24. D.C. No. CR-03-00084-VAP-10. Virginia A. Phillips, District Judge, Presiding.

**Disposition:**

**Counsel**                    Joseph T. Vodnoy of Los Angeles, California, for defendant-appellant, Rodrick Cardale Reed.
                    Alissa   Sawano   Peterson   of   Irvine,   California,   for defendant-appellant, Richard Darnell Johnson.
                    Robinson D. Harley, Jr. of Santa Ana, California, for defendant-appellant, George Williams.
                    Shannon P. Ryan, Assistant United States Attorney for the Central District of California, Los Angeles, California, for appellee, United States of America.
**Judges:** Before: Harry Pregerson, Cynthia Holcomb Hall, and N. Randy Smith, Circuit Judges. Opinion by Judge N.R. Smith.

**CASE SUMMARY**

**PROCEDURAL POSTURE:** Defendants challenged their convictions and sentences imposed by a jury in the United States District Court for the Central District of California for conspiracy crimes involving the manufacture and distribution of phencyclidine. The first defendant was also convicted of conspiracy to possess firearm silencers. The first and second defendants were sentenced to life in prison. The third defendant was sentenced to 96 months in prison.Although defendants argued that the wiretap should have been suppressed because the government failed to seal the call data content (CDC) from the target telephone number , 18 U.S.C.S. § 2518(8) did not apply to CDC, because it was not an intercepted "oral or wire communication" that fell within the sealing requirements of § 2518(8).

**OVERVIEW:** Defendants argued that the district court erred in denying their motion to suppress wiretap evidence because the government failed to show necessity for the wiretap on the target telephone number, as required by 18 U.S.C.S. §§ 2518(1)(c) & (3)(c). The appellate court held that the

A09CASES                                   1

© 2010 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

EXHIBIT (B)

```
 1   as opposed to federal, but I feel that it is a more accurate

 2   reflection of what's going on in terms of reasonable doubt.

 3            THE COURT:  All right.  The next issue is the mere

 4   presence instruction which I think was submitted on behalf of

 5   Mr. Juarez' client.

 6            I guess, Ms. Ricker, did you join in requesting

 7   that one as well?

 8            MS. RICKER:  Yes, Your Honor.

 9            THE COURT:  I think the issue here is whether the

10   evidence would support the -- the evidence would support an

11   instruction that -- well, any of the defendants going to

12   trial on this case were merely present at the scene.

13            MS. RICKER:  May I, Your Honor?

14            THE COURT:  Certainly.

15            MS. RICKER:  The reason for that instruction is the

16   phrase -- I don't have it in front of me -- knowledge,

17   presence or knowledge -- presence at or knowledge of.

18            THE COURT:  Mere presence at the scene of the crime

19   or mere knowledge that a crime is being committed.

20            MS. RICKER:  Yes.

21            THE COURT:  And so you want to expound a little

22   further?

23            MS. RICKER:  Because I believe the evidence as to

24   my client, Mr. Williams --

25            THE COURT:  The mere presence?
```

ER 1607

1          MS. RICKER:  No, no, knowledge of, association,

2    being around people, knowing what they are doing.  There was

3    testimony by one of the cooperating witnesses that

4    Mr. Williams was -- I forget the expression -- something

5    relative to hanging out at the -- whichever residence it was

6    of Mr. Reed.  He wasn't doing anything.  He was just kind of

7    there.  Things were going on.  He wasn't participating in

8    them.  I think that's the knowledge portion of that and mere

9    presence as well.  Thank you.

10          MR. JUAREZ:  Your Honor, with Mr. Johnson, if we

11   set aside the live testimony, for better use of a word, of

12   the two Government informants, then we're left with

13   Mr. Johnson driving a van, merely present.  Not a lab, it was

14   not a lab.  That's the first time I ever heard anybody try to

15   say that a vehicle carrying chemicals is a lab.  Merely the

16   driver of a van carrying chemicals, merely present, so I

17   think --

18          THE COURT:  I'm sorry?

19          MR. JUAREZ:  So I think the instructions are

20   appropriate because the facts are supported.

21          THE COURT:  So, in other words, you want to make

22   the argument to the jury that they should disregard the --

23   that they should -- I'm sorry.  You want to make the argument

24   to the jury that they should disregard the testimony of the

25   co-defendants.  And then you would make -- the next step in

ER 1608

1    your argument is once you do that, you should disregard

2    everything they said because they're not to be trusted.  And

3    once you do that, you don't have anything to show that my

4    client was anything, other than his mere presence.

5              MR. JUAREZ:  And at the apartment they found a

6    minuscule of a trace of PCP in the container located in his

7    room that he may or may not have occupied and, again, mere

8    presence.

9              THE COURT:  Mr. Searight.

10             MR. SEARIGHT:  The problem I have with the mere

11   presence instruction is that the commentary -- and they're

12   citing to the <u>Madrama</u> case -- states where the Government's

13   case rests primarily on the defendant's presence and nothing

14   more, a mere presence instruction should be given.  I don't

15   think that's the case with either of these defendants.

16             With regard to Mr. Johnson, he is not just sitting

17   there in the van.  He is actually driving the van.  He also

18   makes statements that are dubious as to what he is doing and

19   where he is going.  Also, there are the items found in his

20   apartment.  And then the phone calls which didn't come in

21   through the informants.  The phone calls are of Mr. Reed

22   talking to him, telling him to get his gun, that he's going

23   to do this deal.  I think we are way beyond mere presence.

24   And the commentary does note that if there's nothing more, a

25   mere presence instruction should be given.

ER 1609

197

1        I would say the same thing with regard to

2   Mr. Williams.  Now, in the telephone calls you do hear

3   Mr. Williams talking about how he's got some people from out

4   of state who are in the water game and going to make major

5   cheese.  And you hear him in the calls we heard today talking

6   about how he's got a spot in the mix and he just needs the

7   money for it.  And then we heard earlier a call where they

8   are discussing about where the tail came from and it came

9   from the docks or where it came from.  All of that is

10  something more than just a person standing there while a

11  crime is committed.

12       So that was my objection to it.  It looks like what

13  the case law is saying is you would give that instruction if

14  you really just had a person standing there, and we don't

15  have that.

16       MS. RICKER:  May I, Your Honor, just briefly?

17       THE COURT:  Yes.

18       MS. RICKER:  The telephone conversations with

19  regard to Mr. Williams, again, support the knowledge portion

20  of that.  The conversations never say that he did anything.

21  He never says he does anything.  He talks about knowing

22  people from out of state.  Thinking about this, hearing that,

23  he never says that he does anything and that's why I think

24  that the knowledge portion in particular in the present

25  instruction supports that.  Thank you.

ER 1610

1          MR. SEARIGHT:  The only response I would have to

2   that is, of course, he's charged with conspiracy, so making

3   those statements to him would be forming the agreement.

4   Submit it.

5          MS. RICKER:  Your Honor, not an agreement

6   necessarily.

7          THE COURT:  All right.  I'm going to think about

8   that one and I'll let you know on Tuesday.

9          MR. JUAREZ:  Your Honor, if Mr. Johnson decides to

10  testify, more than likely we will need 3.4, I think, 3.4.

11         THE COURT:  3.4 about a defendant who testifies to

12  be treated the same as any other?

13         MR. JUAREZ:  Including the informants.

14         THE COURT:  Let's see.  As to -- there was no

15  character testimony as to defendant Stinson.  Are you all in

16  agreement that that portion of the instruction should be

17  modified as to defendant Stinson?

18         MS. RICKER:  I'm sorry, Your Honor, which?

19         THE COURT:  Well, the defendants have requested 4.6

20  which is fine.  That's impeachment as to prior conviction.

21  As to Stinson, 4.7, character of a witness for truthfulness

22  --

23         MS. RICKER:  Oh, yes.

24         THE COURT:  We don't really need that because there

25  was no character evidence as to Mr. Stinson, correct?

ER 1611

EXHIBIT (C)

UNITED STATES DISTRICT COURT

CALIFORNIA DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | | |
|---|---|---|
| GEORGE WILLIAMS | ) | Case NO: EDCR-3-84-VAP |
| Defendant | ) | |
| | ) | SWORN AFFIDAVIT BY DEFENDANT |
| -vs- | ) | |
| | ) | |
| UNITED STATES OF AMERICA | ) | |
| Respondent | ) | |
| _____ | ) | |

THE DEFENDANT AFFIDAVIT

STATE OF CALIFORNIA

COUNTY OF SAN BERNADINO

Before me, personally appeared George Williams who files
affidavit in support of his habeas corpus §2255 motion before
this Honorable District Court the defendant further states
for the record:

I George Williams during all proceedings including before
or after trial nobody inform me of my consequence of a
mandatory life sentence (without adequate notice) by defense
counsel or by the government had never consulted with me
about any enhancement under §851 or career offender. Which
nobody inform me of my consequence in open court or any type
of document. The defense counsel advise me about that my
maximum penalty was only between 20 to 25 years if go to
trial in found guilty by jury verdict. One December 5, 2005
by admitted to admission on two prior convictions. The

Honorable District Court never advise me of a mandatory life sentence if a jury return a guilty verdict by admitted to two prior conviction. The record cleary reflect no one mention to me in open court of my consequence not once. This is true a sworn affivadit by defendant.

The above statement is true and correct to best of my knowledge and belief date 25 day of Octocber 2010.

STATE OF CALIFORNIA

COUNTY OF SAN BERNADINO

Sworn to or affirmed and subscribed before me on this 25 day Octocber 2010.

Geogre Williams, personally know to me produced identification pursaunt to Tiltle 28 u.s.c.§1746.

D.O.B. 2-29-64   Sex M      Race Black

This document has been respectfully submitted by:

*George Williams*

GEORGE WILLIAMS #30152-112

United States Penitentiary Victorville

P.O. Box 5300

Adelanto Ca. 92301

SUBSCRIBED AND SWORN BEFORE ME
THIS 12 DAY 26 20 10
FEDERAL CORRECTIONAL COMPLEX, VICTORVILLE, CA
SAN BERNARDINO COUNTY
G. Adams
CASE MANAGER
AUTHORIZED BY ACT OF CONGRESS JULY 7, 1955
TO ADMINISTER OATHS
(TITLE 18. U.S.C. SECTION 4004)



**TERRY NAFISI**

District Court Executive
and Clerk of Court

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION**
312 North Spring Street, Room G-8 Los
Angeles, CA  90012
Tel: (213) 894-7984

**SOUTHERN DIVISION**
411 West Fourth Street, Suite 1053
Santa Ana, CA 92701-4516
(714) 338-4570

**EASTERN DIVISION**
3470 Twelfth Street, Room 134
Riverside, CA 92501
(951) 328-4450

Friday, November 05, 2010

MR. GEORGE WILLIAMS #30152-112
UNITED STATES PENITENTIARY VICTORVILLE
PO BOX 5300
ADELANTO, CA 92301


Dear Sir/Madam:

A ☐ Petition for Writ of Habeas Corpus was filed today on your behalf and assigned civil case number

_____

A ☒ Motion pursuant to Title 28, United States Code, Section 2255, was filed today in criminal case
number **EDCR03-00084 VAP**   and also assigned the civil case number   **EDCV10- 1714 VAP**

A ☐ Motion for Extension of Time to File Habeas Corpus Petition was filed today on your behalf and
assigned civil case number _____

Please refer to these case numbers in all future communications.

Please Address all correspondence to the attention of the Courtroom Deputy for:
☒ District Court Judge   **Virginia A. Phillips**_____
☐ Magistrate Judge _____
at the following address:

☐ U.S. District Court
312 N. Spring Street
Civil Section, Room G-8
Los Angeles, CA  90012

☐ Ronald Reagan Federal
Building and U.S. Courthouse
411 West Fourth St., Suite 1053
Santa Ana, CA  92701-4516

☒ U.S. District Court
3470 Twelfth Street
Room 134
Riverside, CA 92501


The Court must be notified within fifteen (15) days of any address change.  If mail directed to your
address of record is returned undelivered by the Post Office, and if the Court and opposing counsel
are not notified in writing within fifteen (15) days thereafter of your current address, the Court may
dismiss the case with or without prejudice for want of prosecution.

Very truly yours,

Clerk, U.S. District Court


By: _____LMURRAY_____

Deputy Clerk


CV-17 (06/09)                    **LETTER re FILING H/C PETITION or 28/2255 MOTION**

140 0000 6680 6580

STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, I CAN AT BOTTOM LINE

CERTIFIED MAIL

140 0000 6680 6580

UNITED STATES DISTRICT COURT
Central District of California
Eastern Division - Riverside
3470 12th Street Room 134
Riverside, CA 92501-3801

USA FIRST-CLASS
USA FIRST-CLASS FOREVER
USA FIRST-CLASS FOREVER