ANDRÉ BIROTTE JR.
United States Attorney
ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division
TIMOTHY J. SEARIGHT (Cal. Bar No. 151387)
Assistant United States Attorneys
OCDETF Section
    1400 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-3749
    Facsimile: (213) 894-0142
Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Nos. ED CV-10-01714-VAP |
| |     (ED CR 03-0084-VAP-24) |
|     Plaintiff-Respondent, | |
| | GOVERNMENT'S OPPOSITION TO |
| v. | DEFENDANT'S MOTION FILED PURSUANT |
| | TO 28 U.S.C. § 2255; POINTS AND |
| GEORGE WILLIAMS, | AUTHORITIES IN OPPOSITION |
| | |
|     Defendant-Petitioner. | |
| | Hrg: [None scheduled] |

    Plaintiff-Respondent, United States of America, by and
through its counsel of record, Assistant United States Attorney
Timothy J. Searight, hereby files opposition to defendant George
Williams' motion filed pursuant to 28 U.S.C. § 2255 to Vacate,
Set Aside or Correct Sentence.  The government's opposition

///
///
///

is based upon the attached memorandum of points and authorities, the files and records of this case, and the separately filed Excerpts of Record and declaration of Darlene M. Ricker.

Respectfully submitted,

United States Attorney

ANDRÉ BIROTTE JR.
Assistant United States Attorney
Chief, Criminal Division

Dated:  April 18, 2011

TIMOTHY J. SEARIGHT
Assistant United States Attorney
Attorneys for Plaintiff

# TABLE OF CONTENTS

PAGE

I    STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . 1

II   STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . 2

    1.  Evidence Presented at Trial . . . . . . . . . . . . . 2

    2.  Defendants' Motion to Dismiss re: Agent Notes . . . . 5

    3.  The Conspiracy Jury Instruction and Special
        Verdict Form . . . . . . . . . . . . . . . . . . . . . 6

    4.  Defendant's Admission of § 851 Prior Convictions . . 8

    5.  Defendant's Appeal . . . . . . . . . . . . . . . . . . 9

III  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . 10

    A.  Before And After Trial, Counsel Effectively
        Advised Defendant As To The Possible Sentence
        He Faced . . . . . . . . . . . . . . . . . . . . . . . 12

    B.  Counsel Effectively Cross-Examined Cooperating
        Witnesses, and It Is Speculative That Calling
        Additional Witnesses Would Have Led to Relevant
        Impeachment Evidence . . . . . . . . . . . . . . . . . 15

    C.  Because The Instructions Provided The Jury For
        Conspiracy Were Correct and Sufficient, Counsel
        Was Not Ineffective In Failing to Object To Them . . 18

    D.  The Verdict Form Appropriately Stated The Decision
        The Jury Was Required To Make As To The Amount of
        PCP For Which Defendant Was Responsible . . . . . . . 20

IV   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . 22

-i-

**TABLE OF AUTHORITIES**

PAGE(S)

CASES:

Alexander v. McCotter,
    775 F.2d 595 (5th Cir. 1985) . . . . . . . . . . . .   17

Beckham v. Wainwright,
    639 F.2d 262 (5th Cir. 1981) . . . . . . . . . . . .   14

Brady v. United States,
    397 U.S. 742 (1970) . . . . . . . . . . . . . . . .   13

Chandler v. United States,
    218 F.3d 1305 (11th Cir. 2000) . . . . . . . . . .   12

Chapman v. United States,
    500 U.S. 453 (1991) . . . . . . . . . . . . . . . .   21

Clay v. United States,
    537 U.S. 522 (2003) . . . . . . . . . . . . . . . .   11

Dows v. Wood,
    211 F.3d 480 (9th Cir. 2000) . . . . . . . . . . . .   17

Featherstone v. Estelle,
    948 F.2d 1497 (9th Cir. 1991) . . . . . . . . . . .   12

Jones v. Barnes,
    463 U.S. 745 (1983) . . . . . . . . . . . . . . . .   13

Kimmelman v. Morrison,
    477 U.S. 365 (1986) . . . . . . . . . . . . . .   12, 20

LaGrand v. Stewart,
    133 F.3d 1253 (9th Cir. 1996) . . . . . . . . . . .   12

Miller v. Keeney,
    882 F.2d 1428 (9th Cir. 1989) . . . . . . . . . . .   20

Murray v. Maggie,
    736 F.2d 279 (5th Cir. 1984) . . . . . . . . . . . .   17

Strickland v. Washington,
    466 U.S. 668 (1984) . . . . . . . . . .   11, 12, 13, 16

-ii-

**TABLE OF AUTHORITIES (Continued)**

                                                                          **PAGE(S)**

**CASES:**

<u>United States ex rel. McCall v. O'Grady</u>,
    908 F.2d 170 (7th Cir. 1990) . . . . . . . . . . . .   17

<u>United States v. Reed, et. al</u>,
    575 F.3d 900 (9th Cir. 2009) . . . . . . . . . .   Passim

<u>United States v. Sprague</u>,
    135 F.3d 1301 (9th Cir. 1998) . . . . . . . . . . . .   21

**STATUTES:**

21 U.S.C. §§ 841(a)(1) . . . . . . . . . . . . . . . . .   1

21 U.S.C. § 851 . . . . . . . . . . . . . . . .   1, 8, 14, 15

28 U.S.C. § 2255 . . . . . . . . . . . . . . . .   1, 2, 22

## POINTS AND AUTHORITIES

### I

### STATEMENT OF THE CASE

Defendant George Williams ("defendant") and twenty others were charged in a nine-count First Superseding Indictment ("FSI") with drug and firearm offenses.  (GER 1).[1]  Defendant was named only in Count One of the FSI.  (<u>Id.</u>)  Count One charged defendant and others with conspiracy to manufacture and distribute 100 grams and more of phencyclidine ("PCP"), in violation of 21 U.S.C. §§ 841(a)(1) and 846.  (<u>Id.</u>)

On July 7, 2005, the government filed an information pursuant to 21 U.S.C. § 851 alleging that defendant had previously been convicted of two felony drug crimes.  (CR 928; GER 18).

On July 28, 2005, defendant proceeded to trial with co-defendants Rodrick Reed, Richard Johnson and Natalia Knox.  (CR 954).  On July 28, 2005, defendant was convicted on Count One of the FSI.  (CR 100).  The jury also made a special finding that defendant was responsible for 175 kilograms of a mixture or substance containing PCP.  (RT 7/28/05 14; GER 131).

On December 5, 2005, defendant admitted the allegations of

---

[1] "GER" refers to the Government's Excerpt of Record, and is followed by the page number.  "RT" refers to the Reporter's Transcript and is followed by the date and page number.  "PSR" refers to the Pre-Sentence Report that is a part of the Court's record, and is followed by the paragraph number.  "CR" refers to the Clerk's Record, and is followed by the docket control number.

1  prior felony drug convictions.   (CR 1132-33).

2      On January 17, 2006, defendant was sentenced.   Defendant was

3  sentenced to life in prison, five years supervised release, and a

4  $100 special assessment.   (CR 1193).

5      On January 27, 2006, defendant filed a notice of appeal.

6  See, United States v. Williams, C.A. 06-50048 (consolidated with

7  appeals in United States v. Reed, et. al, C.A. Nos. 06-50040).

8  On November 6, 2009, defendant's appeal was denied.   See, United

9  States v. Reed, et. al, 575 F.3d 900 (9th Cir. 2009).

10

11      On November 5, 2010, defendant filed the instant motion to

12  Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C.

13  § 2255.

14                          II

15                 STATEMENT OF FACTS

16  1.  Evidence Presented at Trial

17      At trial, agents and officers from a multi-agency task force

18  testified that in the fall of 2002, they began investigating the

19  narcotics activities of co-defendant Rodrick Reed ("Reed").   (RT

20  7/15/05 125; GER 48A).   On February 20, 2003, a law enforcement

21  informant purchased a half-gallon of PCP from an associate of

22  Reed's in a grocery store parking lot in Los Angeles.   (RT

23  7/13/05 100, 116-18; GER 28, 29-31).   On March 21, 2003, in an

24  isolated area near Adelanto, California, agents located a PCP

25  manufacturing site and recovered four pounds of PCP in

26

27

28                          2

crystalline form, and chemicals and equipment used in the manufacture of PCP.   (RT 7/15/05 28, 32-34, 93-97; GER 33, 34-36, 37-41).   Beginning on April 4, 2003 and through early June 2003, agents conducted wiretap interception on telephones being used by Reed, and on telephones being used by his associates.   (RT 7/15/05 107-13; GER 42-48).   As a result of the wiretap intercepts, on April 13, 2003, officers and agents stopped a van traveling on interstate 15 north of San Bernardino.   (RT 7/15/05 166-69; GER 49A-49D).   In the van, agents found 26.1 kilograms of PCP in crystalline form, similar to that found at the Adelanto site.   (RT 7/20/05 67-71; GER 73-77).   They also found chemicals, primarily in plastic and metal drums, that a Drug Enforcement Administration expert testified would have been capable of producing approximately 175 kilograms of PCP.   (RT 7/22/05 51-61, 103-05; GER 102-12, 113-15).   In addition to the expert opinion, there was a wiretap intercept call in which Reed stated that the chemicals were capable of making 150 to 200 gallons of PCP.   (RT 7/21/05 56-59; GER 86-89).   A few weeks after the seizure on Interstate 15, in May 2003, wiretap intercept calls again indicated that Reed and his associates were again manufacturing PCP.   (RT 7/21/05 69-71; GER 91-93).   Officers and agents eventually recovered five gallons of liquid PCP and the remnants of PCP manufacturing operation on a property in Palmdale, California.   (RT 7/22/05 7-13; GER 95-101).

3

From April through June 2003, wiretap intercepts revealed Reed and his associates discussing both the manufacture and distribution of PCP.  On April 6, 2003, defendant was intercepted discussing with co-defendant Kim Stinson ("Stinson") out-of-state customers he had ready to buy PCP -- "in the water game" -- when Reed completed the manufacturing process.  (RT 7/19/05 65-68; GER 60-63).  On April 15, 2003, two days after the Interstate 15 seizure, defendant was intercepted speaking directly to Reed. (RT 7/21/05 50-55; GER 81-85).  In the call, defendant and Reed discussed whether an informant or law enforcement surveillance had resulted in the seizure, and defendant advised Reed to stay away from a location where chemicals could be picked-up.  (Id.).

In addition, at trial, Stinson testified for the government. Stinson testified that he had also been a part of Reed's PCP distribution group.  (RT 7/19/05 57; GER 57-59).  Stinson testified that he personally delivered gallon or half-gallon quantities of PCP from Reed to defendant on a few occasions. (Id.).  He described the meaning of the April 6, 2003 call between himself and defendant, including defendant's statement about having an out-of-state customer for PCP.  (Id.).  He testified that he recalled one incident in which he watched Reed pour a gallon on PCP into an apple juice container and give it to defendant.  (Id.).

2.  Defendants' Motion to Dismiss re: Agent Notes

4

During the testimony of Stinson, Reed inquired informally as to whether there were any handwritten notes of previous interviews with Stinson.  (RT 7/19/05 129; GER 53A).  Special Agent Michelle Starkey ("SA Starkey") stated that she took handwritten notes and then destroyed the notes after converting them into typed reports.  (RT 7/19/05 132-34; GER 65-67).  Defendant, with the co-defendants at trial, filed a motion to dismiss the FSI based upon violations of the Sixth Amendment and the Jencks Act.  (RT 7/20/05 4-7; GER 69-72).

The Court conducted a hearing on the issue at which SA Starkey testified.  SA Starkey testified that she participated in interviews with Stinson and two other cooperating government witnesses, Henry Henderson and Shane Williams.  (RT 7/20/05 248-49, 258; GER 78-78A, 79).  She said that other persons present at the interviews were the witnesses' attorneys, prosecutors and, on occasion, other agents.  (Id.).  SA Starkey stated that, after the interviews, she put all of the information from her notes into typed reports, and then destroyed her notes.  (Id.).  She said that she did so because her notes were difficult to read, that their contents were contained within the typed reports, and that she was not acting pursuant to any official agency policy in destroying her notes.  (Id.).

The Court denied the motion.  The Court found that SA Starkey had not destroyed her notes in bad faith, or pursuant to

5

any official agency policy.  (RT 7/26/05 137-40; GER 117-20).
The Court found that the notes were an aid to memory for SA
Starkey, and that she reduced the contents of her notes to typed
reports.

    3.  <u>The Conspiracy Jury Instruction and Special Verdict Form</u>

    At the conclusion of evidence, in addition to other
instructions, the jury was instructed as to the elements of
conspiracy:

> In order for each defendant to be found guilty [of
> Count One], the Government must prove each of the
> following elements beyond a reasonable doubt:
>
> First, beginning on a date unknown and ending on
> or about October 22nd, 2003, there was an agreement
> between two or more persons to commit at least one
> crime as charged in the Indictment; and,
>
> Second, the defendant became a member of the
> conspiracy knowing of at least one of its objects and
> intending to help accomplish it.
>
> I'm going to discuss with you briefly the law
> relating to each of these elements.
>
> A conspiracy is a kind of criminal partnership.
> It is an agreement of two or more persons to commit one
> or more crimes.  The crime of conspiracy is the
> agreement to do something unlawful.  It doesn't matter
> whether the crime agreed upon was committed.
>
> For a conspiracy to have existed it is not
> necessary that the conspirator made a formal agreement
> or that they agreed on every detail of the conspiracy.
> It is not enough, however, that they simply met or
> discussed matters of common interest, acted in similar
> ways or perhaps helped one another.  You must find that
> there was a plan to commit at least one of the crimes
> alleged in the Indictment as an object of the
> conspiracy with all of you agreeing as to the
> particular crime which the conspirators agreed to

commit.

One becomes a member of the conspiracy by willfully participating in the unlawful plan with the intent to advance or further some object or purpose of the conspiracy even though the person does not have full knowledge of all the details of the conspiracy. Furthermore, one who willfully joins an existing conspiracy is as responsible for it as the originators. On the other hand, one who has no knowledge of a conspiracy but happens to act in a way which furthers some object or purpose of the conspiracy does not thereby become a conspirator.  Similarly, a person does not become a conspirator merely by associating with one or more persons who are conspirators, nor merely by knowing that a conspiracy exists.

(RT 7/27/06 114-16; GER 122-24).

The jury was also provided with the <u>Pinkerton</u> instruction:

[Y]ou may find defendants Rodrick Reed, Richard Johnson and George Williams guilty of the crimes of manufacture, aiding and abetting the manufacture, possession with the intent to distribute, and distribution or more than 100 grams of phencyclidine, PCP, as charged in Count 1 of the First Superseding Indictment if the Government has proved each of the following elements beyond a reasonable doubt:

1.   A person named in Count 1 of the First Superseding Indictment committed the crime of manufacture, aiding and abetting the manufacture, possession with the intent to distribute, and distribution of more than 100 grams of PCP as alleged in that count;

2.   The person was a member of the conspiracy charged in Count 1 of the First Superseding Indictment;

3.   The person committed the crime of manufacture, aiding and abetting the manufacture, possession with the intent to distribute, and distribution of more than 100 grams of PCP in furtherance of the conspiracy;

4.   The defendant was a member of the same conspiracy at the time the offense charged in Count 1

7

1   was committed; and,

2        5.   The offense fell within the scope of the
3   unlawful agreement and could reasonably have been
    foreseen to be a necessary or natural consequence of
4   the unlawful agreement.

5   (RT 7/27/06 114-18; GER 122-125A).

6        The jury was also provided a special verdict form asking

7   that the jury make a finding as to the amount of PCP for which

8   each defendant was responsible.  In the verdict form, and for

9   each defendant, the jury was asked to fill in a blank in answer

10  to the question, "[W]hat amount of a mixture or substance

11  containing [PCP] do you unanimously find to have been proven

12  beyond a reasonable doubt as either having been within the scope

13  of defendant's agreement with his co-conspirators or that was

14  reasonably foreseeable to defendant."  (RT 7/28/05 10-15;

15
16  GER 127-32).

17       4.   <u>Defendant's Admission of § 851 Prior Convictions</u>

18       After trial, defendant appeared in court and admitted each

19  of the two allegations of prior conviction pursuant to 21 U.S.C.

20  § 851.  In taking the admissions, the Court conducted the

21  following colloquy:

22       THE COURT:   Do you admit or deny the allegation of your
23                    prior conviction in Count 3 [of the
                      information]?
24
         DEFENDANT:   Admit.
25
         THE COURT:   . . . .  And in Count 4 of the Information . .
26                    . . [d]o you admit or deny this allegation?

27

28                                    8

| | | |
|---|---|---|
| DEFENDANT: | Admit. |
| THE COURT: | And are you making these admissions freely and voluntarily and without coercion? |
| DEFENDANT: | Freely. |
| THE COURT: | And have you discussed the allegations in Counts 3 and 4 thoroughly with your lawyer before you came here today? |
| DEFENDANT: | Yes. |
| THE COURT: | Ms. Ricker, do you concur in the admissions as to Counts 3 and 4? |
| DEFENDANT: | I do, Your Honor. |

(RT 12/05/05 8-10; GER 134-36).

   5.   Defendant's Appeal

   Defendant appealed his conviction and sentence.  Among other issues, defendant raised three issues relevant to this motion. Defendant argued that at trial this Court erred in denying the motion to dismiss with regard to the destruction of agent notes. Defendant argued that the conspiracy instructions were insufficient because they did not advise the jury on the meaning of "aiding and abetting," and thereby lowered the mens rea requirement of knowing or intentional aiding and abetting. Defendant also argued that the special verdict form was improper because it stated in the disjunctive that the PCP for which defendant was responsible was required to be "either having been within the scope of defendant's agreement with his co-conspirators or that was reasonably foreseeable to defendant."

Defendant noted that the Sentencing Guidelines, U.S.S.G. 1B1.3, Application Note 3, required that the relevant conduct be both within the scope of the agreement and reasonably foreseeable.

The Ninth Circuit denied defendant's appeal. <u>See</u>, <u>United States v. Reed</u>, 575 F.3d 900 (9th Cir. 2009). As to the destruction of agent notes, the court found no Jencks Act violation because the notes were never approved and adopted by a witness and were not, therefore, "statements" that were required to be preserved. <u>Id.</u> at 920-21. The court also found no Sixth Amendment Confrontation Clause violation because defendant was able to cross-examine the witnesses, and made no showing of prejudice. <u>Id.</u> at 921. The court further found that the jury was appropriately instructed on the law and elements of conspiracy, including the mens rea elements, and noted that the elements of "aiding and abetting" were set-forth in instructions on other counts. <u>Id.</u> at 926-27. With regard to the verdict form, the court noted that the use of the disjunctive, even if inconsistent with the Sentencing Guidelines, "is consistent with our prior statements of the law relating to sentencing under the statutory mandatory minimum." <u>Id.</u> at 927-28.

III

ARGUMENT

In defendant's motion, defendant asserts that his counsel

10

was ineffective at trial and sentencing.[2]  The government is able to isolate four arguments advanced by defendant.  First, defendant argues that counsel was ineffective in failing to advise him both before trial and at the time of the admission of the prior drug convictions that he faced a mandatory life sentence.  Second, he asserts that counsel should have called additional witnesses who were present at the interviews with government witnesses to determine if the testimony these witnesses was contrary to the government witnesses.  Third, defendant asserts that counsel should have objected to the conspiracy jury instruction because it failed to adequately advise the jury of "foreseeability" and a defendant's criminal responsibility under conspiracy law.  Fourth, defendant asserts that counsel should have objected to the verdict form because it did not advise the jury that defendant could have been responsible for less than 100 grams of PCP.

Competency of counsel under the Sixth Amendment is evaluated under the standards enunciated by the Supreme Court in Strickland v. Washington, 466 U.S. 668, 687-90 (1984).  "Judicial scrutiny of counsel's performance must be highly deferential."  Id. at 689.  While engaging in a "strong presumption" of regularity,

---

[2]

Entry of the denial of defendant's direct appeal occurred on November 6, 2009.  Defendant filed this timely motion on November 5, 2010.  See, Clay v. United States, 537 U.S. 522, 525 (2003).

defendant must show that "counsel's representation fell below an objective standard of reasonableness" as measured by "prevailing professional norms." Id. at 688. This burden "is a heavy one." Chandler v. United States, 218 F.3d 1305, 1315 (11th Cir. 2000). A defendant is not entitled to "perfect" representation or even "error free" representation. Featherstone v. Estelle, 948 F.2d 1497, 1507 (9th Cir. 1991); LaGrand v. Stewart, 133 F.3d 1253, 1274 (9th Cir. 1996). To prevail, a defendant must show "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland at 687. In making the determination, a court should "assess counsel's overall performance throughout the case." Kimmelman v. Morrison, 477 U.S. 365, 386 (1986). "[A] defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Strickland at 689.

Defendant's motion should be denied. Defendant has failed to show that prior counsel was ineffective in pre-trial proceedings, during trial or at sentencing.

A.  Before And After Trial, Counsel Effectively Advised
    Defendant As To The Possible Sentence He Faced

Defendant asserts that he was not advised of the maximum life sentence before proceeding to trial or before admitting the allegations of prior felony drug conviction. As to advice before

trial, defendant states, "Which defense counsel was very much incompetent about her client mandatory life sentence by unaware of collateral consequence of guilty verdict.  Whether defendant subjectively deprive him of his Fifth and Sixth Amendment Rights to make a determination of his consequence of his sentence. Whether to decide to enter plea a deal or go to trial."  (Def. Mot., p. 9-10).  As to advice prior to admitting the drug convictions, defendant states, "The defendant do not understand nothing about mandatory life because he was not advise by counsel or by the district court by admitted to the prior conviction will result in a mandatory life sentence."  (Def. Mot., p. 12).

Counsel has a "duty to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution." Strickland v. Washington, 466 U.S. 668, 688 (1984).  This duty extends to providing information to a defendant such that a defendant can "make certain fundamental decisions regarding the case, as to whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal." Jones v. Barnes, 463 U.S. 745, 751 (1983).  When deciding whether to accept a guilty plea, counsel has duty to advise the defendant of the available options and possible consequences.  Brady v. United States, 397 U.S. 742, 756 (1970).  Similarly, when a defendant elects to proceed to trial, counsel has a duty to advise the defendant of the maximum

sentence the defendant faces if convicted.   Beckham v.
Wainwright, 639 F.2d 262, 267 (5th Cir. 1981).

Prior to trial, defendant's counsel is clear that she advised defendant that he faced a possible life sentence:

> While the matter was pending trial, I reviewed the potential sentence defendant could receive based upon the allegations contained in the indictment and my knowledge of defendant's previous criminal history.  I was also aware that, sometime before trial, the government filed an allegation of prior drug conviction for defendant pursuant to 21 U.S.C. § 851.  Prior to trial, and on at least one occasion, I explained to defendant the fact that he faced a potential sentence of life in prison.  I spoke with defendant about the possibility of accepting a plea agreement in which he would receive a sentence of less than life in prison. I had discussions with defendant about the facts and circumstances in the case, possible defenses and potential sentence in the case.  Defendant elected to proceed to trial.

(Ricker Decl., ¶ 2).[3]

After trial, the Pre-Sentence Report ("PSR") was disclosed on November 7, 2005.  It specifically stated that defendant faced a mandatory minimum sentence of life in prison in light of the allegations of prior conviction.  (PSR ¶ 173).  On December 5, 2005, the Court took the admissions of prior drug conviction. Before taking the admissions, counsel again explained to defendant the effect of admitting the allegations.  Counsel has stated, "Although I may have had multiple discussions with

---

[3]   Before the commencement of trial, the government stated on the record that it had filed the allegation of prior conviction. (RT 7/8/05 374-75).

14

defendant, I specifically recall I explained the effect of admitting the allegations of prior conviction shortly before the admission was taken.  At no point did defendant request that I challenge the allegations of prior conviction."  (Ricker Decl., ¶ 7).[4]

Because defendant was advised both before and after trial of the life sentence he faced, counsel was not ineffective.

B.  Counsel Effectively Cross-Examined Cooperating Witnesses, and It Is Speculative That Calling Additional Witnesses Would Have Led to Relevant Impeachment Evidence

On appeal, defendant asserted that this Court erred in denying a motion to dismiss based upon the destruction of agent notes of interviews with government cooperating witnesses. United States v. Reed, et. al, 575 F.3d 900, 920-22 (9th Cir. 2009).  The Ninth Circuit disagreed, finding that the agent's

-------

[4]  Defendant also asserts that the Court provided an insufficient colloquy with defendant before taking the admissions of prior conviction.  In defendant's direct appeal, however, the Ninth Circuit found that, in taking admissions to 21 U.S.C. § 851 allegations, a court is not required to conduct a full Rule 11 colloquy.  United States v. Reed, et. al, 575 F.3d 900, 928-29 (9th Cir. 2009).  Although not raised by defendant, the Ninth Circuit noted that defendant was not advised that he could challenge the legality of the prior convictions, but found this was not error because there was nothing suggesting defendant wished to challenge the prior convictions.  Id.  Counsel has now specifically stated that defendant did not ask her to challenge the prior convictions.  (Ricker Decl., ¶ 7).

15

notes were not Jencks material because the statements within the notes were never adopted by the witnesses, and the Confrontation Clause was not violated because defendants had adequate opportunity to cross-examine the government witnesses.  <u>Id.</u> at 920-23.

In this motion, defendant asserts that counsel was ineffective at trial for failing to call other witnesses at the interviews -- including prosecutors, defense counsel and additional agents -- who might have recalled statements that contradicted what was in the agent's formal report or what was stated at trial by the government witnesses.  (Def. Mot., p. 15, 19, 25).  Defendant states, "The transcript reveals the defense counsel could have called other witness to verify the accuracy of the agent notes.  Because she had mention other people involvement include the other co-defendant she interview about her notes really being accurate."  (Def. Mot., p. 15).

Under <u>Strickland</u>, efficacy of counsel is examined in a two-prong test.  First, while engaging in a "strong presumption" of regularity, a defendant must show that counsel performance fell "below an objective standard of reasonableness."  <u>Strickland v. Washington</u>, 466 U.S. 668, 688 (1984).  Second, there must be a showing that the defendant was prejudiced, that is, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have

been different." Id. at 694.   As a general rule, ineffective assistance claims based on counsel's failure to call a witness "are not favored in federal habeas review." Murray v. Maggie, 736 F.2d 279, 282 (5th Cir. 1984).   "Complaints based upon uncalled witnesses [are] not favored because the presentation of witness testimony is essentially strategy and thus within the trial counsel's domain, and that speculations as to what these witnesses would have testified is too uncertain." Alexander v. McCotter, 775 F.2d 595, 602 (5th Cir. 1985).   In the Ninth Circuit, and other circuits, a claim based upon a failure to call a witness "requires the petitioner to present evidence that the witness would have provided helpful testimony for the defense, such as an affidavit from the alleged witness. Dows v. Wood, 211 F.3d 480, 486 (9th Cir. 2000); See also, United States ex rel. McCall v. O'Grady, 908 F.2d 170, 173 (7th Cir. 1990).

In this case, defendant has attached no declaration showing what favorable evidence additional witnesses would have provided relative to the cooperating witnesses.   With regard to prosecutors and agents other than SA Starkey who were present for the interviews of the cooperating witnesses, defendant has failed to show how failing to call these persons prejudiced his case; to the contrary, it seems highly likely that calling other agents or prosecutors would have had the effect of bolstering the testimony of the cooperating witnesses.   With respect to calling the

counsel of the cooperating witnesses, to the extent that counsel would possess information contrary to the testimony of the cooperating witnesses they represented, to provide that information would potentially be to take a position contrary to the position of their clients, making it doubtful that defendant would be in a position to obtain such information.  Perhaps more to the point, on the issue of prejudice, the Ninth Circuit noted that defendant's Sixth Amendment right of confrontation was sufficiently satisfied by defendant's ability to cross-examine the cooperating witnesses.

Defendant has failed to make a showing of prejudice because he has not shown how calling additional witnesses would have altered the outcome of his case.

C.   <u>Because The Instructions Provided The Jury For</u>
<u>Conspiracy Were Correct and Sufficient, Counsel Was Not</u>
<u>Ineffective In Failing to Object To Them</u>

Defendant asserts that counsel was ineffective in failing to object to the jury instructions for conspiracy.  Defendant states, "Defense counsel failure to the objection merely associated with a person committing the crime does not mean he apart conspiracy." (Def. Mot., p. 28).  Defendant further states, "The counsel failed challenge that jury was never told what jointly undertaken criminal activity to be foreseeable drug quantities whether defendant held accountable for the drug

18

conduct which be was directly involved the entire conspiracy, manufacture, distribution, dispensing of possession with intent to manufacture PCP." (Def. Mot., p. 29-30). Defendant also states, "Defendant counsel failed to objection on her client behalf which was the instruction jury was read as a whole on the conspiracy were clearly misleading and inadequate to guide the jury's deliberation." (Def. Mot., p. 30).

The Ninth Circuit noted in this case that, "The jury instructions, read as whole, were not misleading or inadequate. The jury was instructed (using Ninth Circuit Model Instructions 8.16 and 820) regarding the elements of the crime for which Williams was charged: conspiracy." United States v. Reed, et. al, 575 F.3d 900, 926 (9th Cir. 2009). As to association, the jury was told, using Model Instruction 8.16, that "a person does not become a conspirator merely by associating with one or more persons who are conspirators." (RT 7/27/05 116; GER 124). As to foreseeability, the jury was provided the Pinkerton instruction in Model Instruction 8.20 which states that a defendant may only be found guilty if "the offense fell within the scope of the unlawful agreement and could reasonably have been foreseen to be a necessary or natural consequence of the unlawful agreement." (RT 7/27/05 117-18; GER 125-25A). Counsel has stated that she "reviewed the jury instructions in the case, and they appeared to correctly state existing conspiracy law." (Ricker Decl., ¶ 6).

Counsel was correct.

Counsel is not deficient for failing to make an ineffective or weak argument. Miller v. Keeney, 882 F.2d 1428, 1434 (9th Cir. 1989). See also, Kimmelman v. Morrison, 477 U.S. 365, 375 (1986)(counsel not ineffective for failing to make a motion that lacks merit). There is no indication that the jury instructions were inadequate in any way, and defendant fails to point to a specific error.

Because the conspiracy jury instructions were appropriate, counsel was not ineffective in failing to object to them.

D. The Verdict Form Appropriately Stated The Decision The Jury Was Required To Make As To The Amount of PCP For Which Defendant Was Responsible

Defendant states that counsel was ineffective for failing to object to the special verdict form in this case pertaining to the amount of PCP for which defendant was responsible. Defendant states, "The special verdict form instruction was giving to jury was differ from the indictment 'it was obvious' . . . . . [ellipsis in original] that if the jury would know they had a option between less than 100 grams. Counsel did not object to the special verdict form at trial that affect his substantial rights seriously the fairness or integrity of the proceedings." (Def. Mot., p. 4). Defendant further states, "The defendant was improperly calculated its sentence on a quantity of drugs higher

20

that the quantity in indictment on its special verdict form. Here, the jury's finding of over 100 grams PCP would expose the defendant to a higher quantity sentencing that violate defendant's sixth amendment rights." (Id.)

The special verdict form, however, did not ask the jury to validate a particular amount of drugs for which defendant was responsible by, for instance, putting a mark beside a particular quantity, or by some other mechanism. The special verdict form asked the jury to fill in a blank specifying the amount of PCP for which defendant was responsible. (RT 7/28/05 10-15; GER 127-32). There is nothing to suggest that the jury felt it could not put in a quantity in any amount less than the 175 kilograms of PCP that the jury found. The Ninth Circuit held in this case that "the special verdict form is consistent with our prior statements of the law relating to sentencing under the statutory mandatory minimum." United States v. Reed, et. al, 575 F.3d 900, 927 (9th Cir. 2009).[5]  Counsel reviewed the verdict

---

[5]

Defendant also asserts that counsel should have advanced an argument that the amount of PCP for which defendant could be held responsible could not include materials that must be separated from the controlled substance before the controlled substance can be used.  (Def. Mot., p. 8).  While perhaps relevant under the Sentencing Guidelines, defendant's mandatory minimum life sentence was imposed pursuant to statute, which does not make a distinction between a carrier medium and the ingestable drug. Chapman v. United States, 500 U.S. 453 (1991); United States v. Sprague, 135 F.3d 1301, 1306 n. 4 (9th Cir. 1998).  More to the point, this was not a case in which a substantial amount of drugs were found in a solution.  The evidence presented pertained to

21

1  form before it was submitted to the jury and found it to be

2  appropriate based upon existing case law.   (Ricker Decl., ¶ 5).

3  Again, counsel was correct.

4       Because defendant cannot show either that counsel was

5  ineffective in evaluating the verdict form, or that defendant was

6  prejudiced by the verdict form, defendant's claim should be

7  denied.

8                                  IV

9                              CONCLUSION

10      Defendant's motion pursuant to 28 U.S.C. § 2255 should be

11  denied.

12

13

14

15

16

17

18

19

20

21

22

23

24

25  ————————————————

26  the amount of PCP that was foreseeable that the conspiracy of
    which defendant was a part could have produced.   (RT 7/22/05 51-
27  61, 103-05; GER 102-12, 113-15).

28                                  22